liquidation of the liability, or (iii) the existence of rights by a third party to required liquidation of the liability.

(3) Any portion of pension cost computed for a cost accounting period that is deferred to future periods pursuant to a waiver granted under provisions of the Employee Retirement Income Security Act of 1974, shall not be assigned to the current period. Rather, such costs shall be assigned to the cost accounting period(s) in which the funding takes place.

(4) A liability for pension cost for a cost accounting period (or, for pay-as-you-go plans, for payments to retirees or beneficiaries for a period) shall be considered to be liquidated in the period if funding is effected by the date established for filing a Federal income tax return (including authorized extensions). For contractors not required to file Federal income tax returns, the date shall be that established for filing Federal corporation income tax returns.

[40 FR 43878, Sept. 24, 1975; 40 FR 4517, Oct. 2, 1975]

**§ 412.60 Illustrations.**

(a) *Components of pension cost.* (1) Contractor A has a defined-benefit pension plan for its employees. The contractor's policy has been to compute and fund as annual pension cost normal cost plus only interest on the unfunded actuarial liability. Pursuant to § 412.40(a)(1), the components of pension cost for a cost accounting period must now include not only the normal cost for the period and interest on the unfunded actuarial liability, but also an amortized portion of the unfunded actuarial liability. The amortization of the liability and the interest equivalent on the unamortized portion of the liability must be computed in equal annual installments.

(2) Contractor B has insured pension plans for each of two small groups of employees. One plan is funded through a group permanent insurance contract; the other plan is funded through a group deferred annuity contract. Both plans provide for defined benefits. Pursuant to § 413.50(a)(8), for purposes of this Standard the plan financed through a group permanent insurance contract shall be considered to be a defined-contribution pension plan; the net premium required to be paid for a cost accounting period (after deducting dividends and any credits) shall be the pension cost for that period. However, the group deferred annuity plan is subject to the provisions of this Standard that are applicable to defined-benefit plans.

(3) Contractor C provides pension benefits for certain hourly employees through a multiemployer defined-benefit plan. Under the collective bargaining agreement, the contractor pays six cents into the fund for each hour worked by the covered employees. Pursuant to § 412.50(a)(10), the plan shall be considered to be a defined-contribution pension plan. The payments required to be made for a cost accounting period shall constitute the assignable pension cost for that period.

(4) Contractor D provides pension benefits for certain employees through a defined-contribution pension plan. However, the contractor has a separate fund which is used to supplement pension benefits provided for all of the participants in the basic plan in order to provide a minimum monthly retirement income to each participant. Pursuant to § 412.50(a)(9), the two plans shall be considered as a single plan for purposes of this Standard. Because the effect of the supplemental fund is to provide defined-benefits for the plan's participants, the provisions of this Standard relative to defined-benefit pension plans shall be applicable to the combined plan.

(b) *Measurement of pension cost.* (1) Contractor E has a pension plan whose costs are assigned to cost accounting periods by use of an actuarial cost method which does not separately identify actuarial gains and losses or the effect on pension cost resulting from changed actuarial assumptions. If this cost method is used to measure costs for financial accounting purposes, it may be used for purposes of this Standard, provided that the contractor developes the supplementary information set forth in § 412.50(b)(2)(iii) regarding such gains and losses and changed actuarial assumptions. In addition, the contractor must develop an actuarial liability de-



16

termined by a projected benefit cost method set forth in § 412.50(b)(1). If the resultant actuarial liability is less than the value of the pension fund, the pension cost computed for the cost accounting period must be reduced by that amount (§ 412.50(b)(2)(ii)).

(2) For a number of years Contractor F has had a pay-as-you-go pension plan which provides for payments of $200 a month to employees after retirement. The contractor is currently making such payments to several retired employees and charges such payments against current income as its pension cost. For the current cost accounting period, the contractor paid benefits totaling $24,000. Contractor F's method of accounting for pension cost does not comply with the provisions of this Standard relative to pay-as-you-go plans as set forth in §§ 412.40(c) and 412.50(b)(4). The contractor should:

(i) Compute, by use of an actuarial cost method, its actuarial liability for benefits earned by plan participants. This entire liability is always unfunded for a pay-as-you-go plan.

(ii) Compute a level amount which, including an interest equivalent, would amortize the unfunded actuarial liability over a period of no less than 10 or more than 40 years.

(iii) Compute, by use of the actuarial cost method selected, a normal cost for the period.

The sum of paragraphs (b)(2)(ii) and (iii) of this section represents the amount of pension cost assignable to the period. If payment of benefits earned by plan participants can be compelled, the entire amount of cost assignable to the period is allocable to cost objectives of that period. If such payments cannot be compelled, the amount of assignable cost allocable to cost objectives of that period is limited to the amount of benefits actually paid in that period ($24,000).

(3) Contractor G has two defined-benefit pension plans which provide for fixed dollar payments to hourly employees. Under one plan, the contractor's actuary believes that the contractor will be required to increase the level of benefits by specified percentages over the next several years. In calculating pension costs, the contractor may not assume future benefit greater than that currently require by the plan. With regard to the secon plan, a collective bargaining agree ment negotiated with the employee' labor union provided that pension ben efits will increase by specified percent ages over the next several years. Be cause the improved benefits are re quired to be made, the contractor ca consider such increased benefits i computing pension costs for the cur rent cost accounting perioc (§ 412.50(b)(6)).

(c) *Assignment of pension cost.* Con tractor H has a trusteed pension plar for its salaried employees. It computes $1 million of pension cost for a cost ac counting period. Pursuant to the funding provisions of the Employee Retirement Income Security Act of 1974, the company must fund at least $800,000. Because liquidation of the liability for the portion of pension cost required by law to be funded ($800,000) can be compelled, such cost is allocable to cost objectives of the period, in accordance with § 412.40(c). If Contractor H can be compelled by the trustee or the plan participants to fund the remaining $200,000, the liability therefor is also allocable to cost objectives of that period.

**§ 412.70 Exemptions.**

None for this Standard.

**§ 412.80 Effective date.**

(a) The effective date of this Standard is January 1, 1976.

(b) This Standard shall be followed by each contractor on or after the start of his next cost accounting period beginning after the receipt of a contract to which this Cost Accounting Standard is applicable.

[40 FR 43878, Sept. 24, 1975, as amended at 40 FR 58281, Dec. 16, 1975]

PREAMBLE: Preamble A of the supplement to Part 401 of this chapter explains how effective dates are determined.



17

PREAMBLE A

**Original Publication, 9-24-75**

The following is the preamble to the original publication of Part 412, 40 FR 43873, Sept. 24, 1975.

The Cost Accounting Standard on Composition and Measurement of Pension Cost is one of a series being promulgated by the Cost Accounting Standards Board pursuant to section 715 of the Defense Production Act of 1950, as amended, Pub. L. 91-379, 50 U.S.C. app. 2168, which provides for the development of Cost Accounting Standards to be used in connection with negotiated national defense contracts. This Standard establishes the components of pension cost; the bases for measuring such cost, and the criteria for assigning pension costs to cost accounting periods.

As part of the Board's early research relating to the subject of pension costs, it developed an Issues Paper in August 1973, and a preliminary draft Standard in September 1974. Both the Issues Paper and preliminary Standard were sent to a large cross-section of companies, Government agencies, industry and professional associations, actuaries, and other interested individuals. The Board received responses to these research papers which were useful in identifying the key issues involved in pension cost accounting and in developing a proposed Standard which was published in the FEDERAL REGISTER of May 5, 1975, with an invitation to interested parties to submit written views and comments to the Board. The Board also supplemented the invitation in the FEDERAL REGISTER by sending copies of the proposed Standard to several hundred organizations and individuals who had provided the Board with comments on the preliminary proposal or who had otherwise expressed interest in the subject of the Standard.

The Board received 80 sets of written comments from companies, Government agencies, professional associations, industry associations, public accounting firms, universities, actuaries and others in response to the FEDERAL REGISTER proposal. All of these comments have been carefully considered by the Board. The Board's views on each of the major issues discussed by commentators are outlined below, together with explanations of the changes made in the Cost Accounting Standard being promulgated.

The Board wishes to take this opportunity to express its appreciation for the helpful suggestions and constructive criticisms it has received, and for the time devoted to assisting the Board in this endeavor by the many organizations and individuals involved.

(1) RELATIONSHIP TO THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 AND TO GENERALLY ACCEPTED ACCOUNTING PRINCIPLES

The Board received a variety of comments relative to the relationship between the proposed Standard, the Employee Retirement Income Security Act of 1974 (ERISA), and generally accepted accounting principles set forth in "Accounting for the Cost of Pension Plans," Opinion No. 8 by the Accounting Principles Board (APB-8). Some stated that, with the enactment of ERISA, Congress has expressed its will relative to pensions and a Cost Accounting Standard on pension costs which is different than ERISA is unnecessary. Others stated that APB-8 is a viable and proven document which provides sufficient guidance for both financial accounting and cost accounting purposes. Others stated that the combination of ERISA and APB-8 provides all the guidance needed for cost accounting purposes. Still others stated that a Standard should be deferred until the Federal regulations required by ERISA have been promulgated, and/or the Financial Accounting Standards Board (FASB) completes its reevaluation of APB-8.

The purpose of the Board in promulgating this Standard is to establish the accounting bases for measuring the proper amount of pension cost to be assigned to cost accounting periods for subsequent allocation to negotiated Government contracts.

ERISA establishes, among other things, minimum funding standards for pension plans and provisions affecting deductibility of pension costs for tax purposes. Although there is



311-003 O—92——14

some commonality between the funding provisions of ERISA and the provisions of the Standard, ERISA does not provide for the measurement of pension costs for assignment among cost accounting periods or for the subsequent allocation of such costs to contracts. Accordingly, the Standard contains requirements, not contained in ERISA, to accomplish these purposes. Nevertheless, on the basis of its research, the Board is confident that the Standard being promulgated is compatible with the requirements of ERISA, i.e., compliance with the provisions of the Standard does not violate the provisions of ERISA, although certain provisions of the Standard are more restrictive than is permitted by ERISA.

APB-8 provides criteria for accounting for the cost of pension plans for financial accounting purposes. The Board believes that certain of these criteria are not appropriate for Government contract costing purposes. For example, a fundamental concept of APB-8 is that the annual pension cost to be charged to expense for financial accounting purposes is not necessarily determined by the funding of a pension plan. The Board believes that a requirement of law for annual minimum funding of pension costs on an irrevocable basis, is strong evidence that an obligation for at least such period.

The Board is aware of the FASB's projects to establish financial accounting and reporting Standards for employee benefit plans and to reevaluate APB-8, as well as the need for the cognizant Government agencies to develop regulations relative to ERISA. It is our understanding that the FASB reevaluation of APB-8 is not likely to result in a Standard that would be applicable before the end of calendar year 1976. The Board believes, however, that the issuance of a Cost Accounting Standard is needed promptly for contract costing purposes.

For example, there does not now exist any authoritative guidance which sets forth the components of pension cost that are properly includable and excludable for contract costing purposes. In addition, there are no existing criteria to resolve how the components of pension cost, once determined, shall be measured and assigned to cost accounting periods. The need for such measurement and assignment criteria for contracts is particularly critical because of the long-range projections used in computing pension cost and because the many techniques available for measuring and assigning such cost have significant impacts thereon. The significant amounts involved in annual pension cost calculations, the changes in the mix of contractors' Government and commercial business, and the settlement of individual contracts long before actual pension costs can be determined create a special need to provide criteria relative to the assignment of pension costs among cost accounting periods and the allocation of such costs to the cost objectives of the periods.

In developing the accompanying Cost Accounting Standard, the Board has attempted to stay within the general constraints of APB-8 and the funding provisions of ERISA. The Board recognizes that in the FASB's reconsideration of APB-8, the FASB could make significant changes in the manner in which pension costs are to be treated for financial accounting purposes and that the FASB's project on financial accounting and reporting for employee benefit plans may influence the conclusions reached in the reevaluation of APB-8. However, any such changes would be directed to external financial reporting and would not necessarily impact contract costing. The Board is also aware that Federal regulations which may be issued could conflict with a provision of this Standard. The Board maintains constant liaison with the FASB with regard to the two Boards' respective responsibilities for developing Standards. It also maintains liaison with the legislative and regulatory bodies responsible for developing and administering ERISA. The Board will review whatever pronouncements these bodies may issue and will make whatever revisions to the Standard it deems appropriate for contract costing purposes.

(2) NEED FOR TWO STANDARDS RELATIVE TO PENSION COST

Several commentators suggested that this Standard should deal not only with the composition and measurement of pension cost, but also with actuarial gains and losses[1] and the allocation of pension costs. The Board believes that the development of a separate Standard covering the latter two areas is advisable. First, the development of a single Standard would result in an extremely large and complex Standard that could create many problems in implementation and administration. For example, the Issues Paper developed by the Board set forth a total of 50 distinct accounting issues requiring resolution; the Standard being promulgated covers only 24 of these issues. In addition, the Board believes that the subjects covered by the two Standards are separable; a Standard can be issued relative to the composition and measurement of pension cost without creating a concurrent need for a Standard relative to the adjustment and allocation of such costs. Moreover, in computing actuarial gains and losses, it is necessary to determine how fund assets should be valued. APB-8 does not cover this aspect of pension cost accounting. In its project on accounting for pension funds, the FASB is endeavoring to specify the manner in which assets should be valued. The Board intends, as part of its continuing liaison with the FASB on this matter, to exchange research so that any possible differences in concept or approach could be minimized or eliminated entirely.

(3) TREATMENT OF ACTUARIAL GAINS AND LOSSES

The FEDERAL REGISTER proposal noted that an adjustment for actuarial gains or losses is a component of pension cost. Several commentators expressed concern over the Board's intent. Some commentators interpreted the proposed Standard as requiring that actuarial gains and losses be spread over a number of years. Other commentators believed that the proposed Standard required the immediate recognition of actuarial gains and losses.

The Board emphasizes that the Standard does not delineate how actuarial gains and losses shall be accounted for at this time. The Standard being promulgated neither requires nor prohibits immediate recognition of gains and losses or the spreading of such gains and losses to future years. Therefore, actuarial gains and losses should be accounted for in accordance with pertinent laws and regulations, and should be consistently applied. Section 412.50(a)(5) has been amended to clarify this concept.

(4) ACTUARIAL COST METHODS[2]

Many commentators expressed their concern over the section of the FEDERAL REGISTER proposal which limited acceptable actuarial cost methods to the accrued benefit cost method[3] or to a projected benefit cost method[4] which separately identifies unfunded actuarial liabilities[5] and actuarial gains and

[1] "The effect on pension cost resulting from differences between actuarial assumptions and actual experience."

[2] "A technique which uses actuarial assumptions to measure the present value of future pension benefits and pension fund administrative expenses, and which assigns the cost of such benefits and expenses to cost accounting periods."

[3] "An actuarial cost method under which units of benefit are assigned to each cost accounting period and are valued as they accrue—that is, based on the services performed by each employee in the period involved. The measure of normal cost under this method for each cost accounting period is the present value of the units of benefit deemed to be credited to employees for service in that period. The measure of the actuarial liability at a plan's inception date is the present value of the units of benefit credited to employees for service prior to that date. (This method is also known as the Unit Credit cost method.)"

[4] "Any of the several actuarial cost methods which distribute the estimated total cost of all of the employees' prospective benefits over a period of years, usually their working careers."

[5] "Pension cost attributable, under the actuarial cost method in use, to years prior to the date of a particular actuarial valuation. As of such date, the actuarial liability represents the excess of the present value of the

*Continued*



20