losses. This section, in effect, ruled out the use of an aggregate[6] cost method for measuring pension costs for negotiated Government contracts. Most of these commentators noted that ERISA and APB-8 permit these methods to be used.

The Board's primary reason for prohibiting the use of an aggregate cost method in the proposed Standard was because such a method does not disclose actuarial gains and losses. Any method that does not disclose actuarial gains and losses impairs the ability to determine whether actuarial assumptions[7] are reasonable. Actuarial assumptions are significant underlying factors for determining the amount of pension costs to be assigned among cost accounting periods. It is only when such assumptions are visible that a determination can be made that they are reasonable. The most appropriate means for determining such reasonableness is to compare assumed events with actual events.

Also, because most aggregate cost methods do not develop unfunded actuarial liabilities, the Government cannot ascertain the funding status of a plan, i.e., whether it is excessively funded at any point in time. Consequently, the Government could be making larger reimbursements than is required to defray its fair share of pension costs incurred by contractors. Many of the comments received acknowledge that most aggregate cost methods do not disclose overfunded situations.

Nevertheless, the Board is impressed by certain of the views of commentators who advocate the use of an aggregate methods. The Board recognizes that aggregate methods are widely used and that they generally spread pension costs evenly and within the periods established in the Standard for amortizing unfunded actuarial liabilities. The Board also notes that commentators stated that a required change in actuarial cost methods may result in substantial actuarial fees and, in some cases, could result in contractors violating current labor commitments.

The Board's solution to this problem was provided generally in several of the comments received. First, several commentators who recognized that an aggregate cost method does not disclose the funding status of a plan, suggested that contractors using such a cost method develop an alternative computation to determine such status. They pointed out that such a computation is required under the full funding limitation of ERISA and is often required by the IRS when it believes a plan may be overfunded.

Other commentators suggested that contractors who use an aggregate cost method provide supplemental information identifying actuarial gains and losses that have occurred and the extent to which such gains and losses have been amortized through subsequent pension contributions or offset by gains and losses in subsequent accounting periods. These commentators informed us that the incremental costs of providing such additional information would be relatively minor.

Accordingly, the Board has added a section, (§ 412.50(b)(2)) which permits a contractor to use any projected benefit cost method if the contractor (1) makes an alternative computation (under a projected benefit cost method which separately discloses unfunded actuarial liabilities and actuarial gains and losses) to disclose the funding status of the plan and reduce pension cost as indicated by such computation, (2) provides supplemental information relative to actuarial gains and losses and gains or losses resulting from changed actuarial assumptions, and (3) uses that method in developing costs for financial accounting purposes.

---

future benefits and administrative expenses over the present value of future contributions for the normal cost for all plan participants and beneficiaries. The excess of the actuarial liability over the value of the assets of a pension plan is the Unfunded Actuarial Liability."

[6] As used herein, an aggregate cost method is any actuarial cost method which spreads the entire cost of future pension benefits over the average future service lives of the current work force and which does not develop actuarial gains or losses.

[7] "A prediction of future conditions affecting pension cost; for example, mortality rate, employee turnover, compensation levels, pension fund earnings, changes in values of pension fund assets."

The third requirement was added because the Board has tried unsuccessfully to ascertain criteria for determining the circumstances under which an aggregate cost method is a preferable method for assigning costs to cost accounting periods for Government contracting purposes.

Finally, to assure that the aggregate cost method used spreads pension costs within the time frames set forth in this Standard for other projected benefit cost methods, § 412.50(b)(2) requires that such aggregate cost methods spread the cost of future pension benefits over the average remaining working lives of the work force.

(5) ACTUARIAL ASSUMPTIONS

A large number of commentators were concerned with the manner in which the FEDERAL REGISTER proposal dealt with actuarial assumptions. They were particularly concerned with that provision of the proposed Standard which stated that when an actuarial assumption differs significantly from historical experience, the contractor shall provide evidence supporting its conclusion that such experience is no longer appropriate. Most commentators who objected to this provision in the Standard interpreted it as requiring separate gain and loss analyses for each assumption each time an actuarial valuation is performed. They cited the large cost of performing such analyses and noted that ERISA merely requires that actuarial assumptions be reasonable "in the aggregate."

Although the Board believes that the basis and rationale for each assumption should be made visible by contractors, it believes that the test of reasonableness of such assumptions should be applied to the end result. It is not the intent of the Board to require a separate gain or loss analysis for each assumption each time an actuarial valuation is made. Rather, the intent is that contractors not use an undocumented composite factor to represent all assumptions used in measuring pension costs, as this practice would inhibit any evaluation of the reasonableness of individual assumptions as applied to future periods. Such evaluations may be necessary when assumptions, taken in the aggregate, are found to be unreasonable, as discussed below.

Once individual actuarial assumptions have been set forth by contractors, the Board believes that the validity of these assumptions can be evaluated by the overall results obtained. Therefore, the Standard provides that the validity of the assumptions used may be evaluated in the aggregate. However, if an actuarial valuation discloses that the assumptions were not reasonable in the aggregate, the Standard requires that the contractor shall identify the major causes for the resultant actuarial gains and losses and set forth the bases and rationale used for either retaining or revising each such assumption.

In order to recognize the long-term nature of pension plans, the Standard provides in § 412.50(b)(5) that actuarial assumptions should reflect long-term trends, rather than short-term fluctuations. Also, the Standard does not specify how often determinations of actuarial gains and losses should be made. ERISA provisions require that such determinations be made not less frequently than once every three years except that more frequent determinations may be prescribed by regulation in particular cases, i.e., for plans which have sustained substantial gains or losses for several periods in succession. The Board believes that the ERISA requirements with respect to the frequency of determinations for gains and losses is equally appropriate for compliance with the provisions of the Standard at this time.

In addition to the foregoing, several commentators stated that the Standard should provide that the judgment of enrolled actuaries, as set forth in ERISA, should be determinate with respect to assumptions as well as other actuarial determinations. The Board recognizes the importance of the functions performed by enrolled actuaries with respect to actuarial determinations. However, contract terms are not imposed on actuaries; rather, it is the contractors who are parties to contracts with the Government and must bear the responsibility for compliance with the terms thereof.

(6) CALCULATIONS OF NORMAL COST [8]

The FEDERAL REGISTER proposal provided that the calculations of normal cost should be the sum of the calculations for the individual employees in the plan, except that homogeneous groupings and averages could be used if the results substantially agree with the results based on individual employee calculations. A number of commentators objected to this provision. They said that it would appear to require that two calculations be made in order to show that the use of groupings and averages gives results that agree with the results based on individual employee calculations. Some commentators stated that this requirement is unrealistic because actuaries frequently use aggregate calculations and that such aggregations can be tested against individual company or industry-wide experience. Other commentators stated that this provision would result in a single calculation for determining the assumed entry age of planned participants.

The comments received indicate that there are divergent opinions as to how normal costs shall be calculated under projected benefit cost methods. Nevertheless, the Board concludes that the methods commonly used would not materially affect the results of normal cost calculations. Accordingly, the requirement to compute normal costs on an individual basis for projected benefit cost methods has been deleted from the Standard.

The proposed Standard provided also that the calculation of normal cost shall be based on a percentage of payroll. Many commentators stated that this requirement does not recognize the fact that many pension benefits are not related to salaries. In order to accommodate these views, the Board has revised the Standard (§ 412.50(b)(3)) to provide that the calculation of normal cost shall be based on a percentage of payroll for plans where the pension benefit is a function of salaries and wages and be based on employee service for plans where the pension benefit is not related to salaries and wages.

(7) PAY-AS-YOU-GO PENSION METHODS [9]

Several commentators apparently assumed that the FEDERAL REGISTER proposal prohibited the recognition of pension costs of plans that provide benefits on a pay-as-you-go basis. One commentator stated that the Standard prohibited the recognition of the costs of pay-as-you-go plans which are not qualified for Federal income tax purposes.

The Board's view, as expressed in the FEDERAL REGISTER proposal, is not to prohibit recognizing the cost of pension benefits provided on a pay-as-you-go basis. Rather, the Board's intent is to specify how the cost of such benefits shall be measured and assigned among cost accounting periods. Moreover, the accounting treatment to be afforded to the costs of pay-as-you-go plans is not dependent on the Federal income tax status of the plan.

Accordingly, the Board has revised the provisions of the Standard relative to pay-as-you-go methods (§ 412.50(b)(4)) and has added an illustration (§ 412.60(b)(2)) to clarify its intent.

(8) UNALLOWABLE PENSION COSTS

The FEDERAL REGISTER proposal provided that the pension costs applicable to prior years that were disallowed in accordance with then-existing Government contractual provisions should be separately identified and eliminated from any unfunded actuarial liability being amortized pursuant to the provisions of the Standard. Several commentators stated that this provision is not equitable because ERISA requires that such amounts be funded.

The Board recognizes that all elements comprising an unfunded actuarial liability, including unallowable costs included therein, are required to be amortized pursuant to the funding provisions of ERISA. However, ERISA does not deal with contract costing and therefore does not deal with unallowable contract costs. The Board be-

[8] "The annual cost attributable, under the actuarial cost method in use, to years subsequent to a particular valuation date."

[9] "A method of recognizing pension cost only when benefits are paid to retired employees or their beneficiaries."

lieves that for contract costing purposes, pension costs which were assignable to prior periods and which were specifically determined to be unallowable under then-existing contractual provisions should not be assignable to periods subsequent to the effective date of this Standard. It should be noted that the treatment of amounts funded in excess of the pension cost for a cost accounting period is separately covered in § 412.50(c)(1).

(9) AMORTIZATION OF UNFUNDED ACTUARIAL LIABILITIES

The FEDERAL REGISTER proposal included a provision requiring contractors to establish and consistently follow a policy for selecting specific amortization periods for any unfunded actuarial liabilities. The proposed Standard stated that such policy should give consideration to the size and nature of unfunded actuarial liabilities. Several commentators stated that they did not believe that the size and nature of such liabilities should govern the choice of amortization periods. The Board's intent was to permit contractors to establish different amortization periods for different types and sizes of unfunded actuarial liabilities. The Board still believes that contractors should be permitted to establish such different amortization periods. Accordingly, the Standard has been revised (§ 412.50(a)(3)) to clarify that such determinations are permissive rather than mandatory.

(10) INTEREST RESULTING FROM DELAYED FUNDING OF PENSION PLANS

The FEDERAL REGISTER proposal provided that if any portion of pension cost computed for a cost accounting period is not funded by the time established by the funding provisions of the plan, an interest equivalent on the amount not funded shall not be a component of pension cost of any other cost accounting period. Several commentators stated that this provision is inequitable because, in order for a pension plan to be viable, an amount equivalent to interest should be added to pension costs to compensate the fund for interest that would have been earned if the cost had been funded in a timely manner. Some commentators added that APB-8 requires that interest equivalents be added to pension accruals under such circumstances. Still others understood the proposed Standard to say that such interest equivalent is not a cost; they therefore disagreed with the proposed Standard.

The Board agrees that an interest equivalent should be recognized in order to determine whether the plan is properly funded. However, the Board believes that interest cost resulting from the delayed funding of a pension plan is a consequence of an investment decision and is, therefore, an investment cost rather than a component of pension cost. The interest was caused by a decision of management to use its funds for other purposes; in effect, management borrowed from the pension trust fund.

Several commentators stated that they compute pension cost at the beginning of a cost accounting period and add interest at the valuation rate to the normal cost to the date of funding. They questioned whether the Standard would prohibit this practice. The Standard being promulgated does not prohibit this practice: *Provided*, That funding is made by the end of the cost accounting period. Accordingly, the Board has amended § 412.50(a)(7) to state that if any portion of the cost computed for a cost accounting period is not funded in that period an amount equivalent to interest computed on that portion beyond the end of that period shall not be a component of pension cost of the current or any future cost accounting period.

(11) ASSIGNMENT OF PENSION COST

Certain commentators expressed their disagreement with the sections of the FEDERAL REGISTER proposal dealing with the assignment of pension costs among cost accounting periods. The concept set forth in the proposal related in the assignment of costs to the validity of the liability for such costs. Commentators referred to the concept set forthin APB-8 that the accrual of pension expenses and the funding of pensions are not necessarily related. They stated that cost should be assigned to cost accounting

periods irrespective of whether or when funded.

The Board believes that assigning pension costs to cost accounting periods on a cash basis is inappropriate from an accounting viewpoint and could lead to the improper assignment of pension costs among periods. The Board believes also that the concept which states that funding is unrelated to pension accruals is not appropriate for contract costing because, under such a concept, pension costs could be assigned to cost accounting periods and never be funded; yet such costs would be reimbursed by the Government.

The underlying concept of the Standard is that when a valid liability exists, the corresponding costs may be accrued irrespective of when the liability is liquidated. If the liability (to the pension fund or, for pay-as-you-go plans, to retirees) is not valid, it cannot be accrued; in order for it to be allocated to cost objectives of the current period, it must be liquidated (funded) in that period or within a reasonable period of time thereafter. In order to clarify its intent with regard to the allocation of pension costs to cost objectives of individual cost accounting periods, the Board has revised the wording of § 412.40(c) of the Standard.

In the FEDERAL REGISTER proposal, the Board noted that the requirement to fund a pension cost pursuant to ERISA made the liability valid and therefore made the cost assignable to the current period. Several commentators stated that ERISA permits such costs to be waived and funded over a 15-year period. They reasoned that under such circumstances it is no longer appropriate to assign such pension cost in the year for which such costs were computed. The Board believes that if the financial, position of a contractor is such that it requests and obtains such a waiver there is doubt as to validity of the liability and therefore of the cost incurred. Accordingly, it has amended the Standard to provide, in § 412.50(c)(3), that if a contractor receives such a waiver the pension costs shall be assigned to the cost accounting periods in which the funding of such cost takes place.

(12) INSURED PLANS

Several commentators stated that the section of the FEDERAL REGISTER proposal dealing with insured plans was confusing. They stated that the definition of a "separate insurance account" set forth in the proposed Standard conflicted with this section. Commentators stated that this section would seem to eliminate from the major requirements of this Standard various forms of insured plans such as deposit administration and immediate participation guarantee contracts.

The Board's intent with regard to insured plans is to treat defined-benefit plans [10] funded exclusively by the purchase of individual or group permanent insurance contracts as defined-contribution plans. [11] The Board's view relative to such plans is consistent with ERISA whose minimum funding requirements are not applicable to these plans. All other insured pension plans are subject to the provisions of this Standard. The Board has revised § 412.50(a)(8) accordingly and has eliminated the definition of separate insurance account.

(13) DEFINITIONS

The Board has received a significant number of comments relative to the definitions used in the Standard. Some commentators stated that the Board should use the definitions contained in ERISA. Others stated that the Board should use the APB-8 definitions. Still others recommended that the Board should establish a single glossary of actuarial terms.

The Board recognizes that a major problem in the field of pension accounting has been the use of various terms which have the same meaning. For example, the term "prior service costs" used in APB-8, "past service costs" used in ASPR, "accrued liability" used in ERISA, and "supplemen

[10] "A pension plan in which the benefits to be paid or the basis for determining such benefits are established in advance and the contributions are intended to provide the stated benefits."

[11] "A pension plan in which the contributions to be made are established in advance and the benefits are determined thereby."

tal liability" used by many actuaries have virtually the same meaning. In researching the definitions currently in use, the Board noted that one factor seemed to prevail: The glossaries in use were tailor-made for the particular documents which applied to the terms. For example, the definitions in APB–8 were written in the context of the way in which the words were intended for use in that Opinion. Similarly, the definitions used in ERISA were fashioned to be in consonance with the specific provision of the Act. The Board's primary objective in developing the definitions in this Standard is similar; the definitions should help provide a clear understanding of the concept used therein, while at the same time maintaining consistency with the thrust of the definitions used in APB–8 and ERISA.

The Board received some additional comments with regard to specific definitions set forth in the FEDERAL REGISTER proposal. One commentator expressed confusion at the terms "accrued pension liability" and "unfunded accrued pension liability" because the word "accrued" has a specific meaning in an accounting sense which is different than that intended in the Standard. The Board believes that this comment has merit and, accordingly, the Standard has been revised to use the terms "actuarial liability" and "unfunded actuarial liability."

Other commentators requested elaboration of the definition of a pension plan. Specifically, they questioned whether the definition is applicable to execute compensation plans, excess benefit plans, and other plans that may not be "qualified" for Federal income tax purposes. The Standard provides the accounting treatment for the cost of all pension plans which fall within the definition of a pension plan. Such accounting treatment is not contingent on the manner in which IRS may categorize plans for income tax purposes.

Several additional commentators questioned that portion of the definition of a pension plan which states that benefits shall be paid for life or be payable for life at the option of the employee. They questioned whether a life income settlement for an employee would fall within the meaning of this definition. The Board believes that such a settlement is, in effect, equivalent to a payment for life and thus falls within the intent of the definition.

(14) COSTS AND BENEFITS

The anticipated benefits of this Standard are improved cost measurement and increased consistency and uniformity in accounting for pension costs and assigning such costs to cost accounting periods, leading to increased assurance that the measured and assigned costs will be allocated to the proper cost objectives, including Government contracts.

When the preliminary draft Standard on pension cost was submitted to a wide cross-section of companies and individuals, the recipients were specifically asked to comment on the costs of implementing the Standard. The overwhelming majority of the respondents stated that the incremental costs of implementation should be small. In commenting on the proposed Standard published in the FEDERAL REGISTER, several respondents stated that the prohibition against use of an aggregate projected benefit cost method and the requirement to make annual gain or loss analyses of each actuarial assumption would involve additional administration costs of any significance. Since the Board has essentially eliminated these problem areas in the Standard, it believes that increased administrative costs occasioned by this Standard will be minimal. In summary, the Board believes that the benefits to be derived from this Standard clearly outweigh the costs of implementation.

The Board expects that this Standard will become effective on January 1, 1976.

There is also being published today an Amendment to Part 400, Definitions, to incorporate in that part terms defined in § 412.30(a) of this Cost Accounting Standard.

Part 412—Cost Accounting Standard for Composition and Measurement of Pension Cost is added to read as follows: