(iii) The change in cost method is a change in accounting method that decreased previously priced pension costs by $40,000 per year. In accordance with 9903.302, Contractor E shall adjust the cost of the firm fixed-price contract for the remaining three years by $120,000 ($40,000x3 years).

(6) Contractor F has a defined-benefit pension plan for its employees. Prior to being subject to this Standard the contractor's policy was to compute and fund as annual pension cost normal cost plus only interest on the unfunded actuarial liability. Pursuant to 9904.412–40(a)(1), the components of pension cost for a cost accounting period must now include not only the normal cost for the period and interest on the unfunded actuarial liability, but also an amortized portion of the unfunded actuarial liability. The amortization of the liability and the interest equivalent on the unamortized portion of the liability must be computed in equal annual installments.

(b) *Measurement of pension cost.* (1) Contractor G has a pension plan whose costs are assigned to cost accounting periods by use of an actuarial cost method that does not separately identify actuarial gains and losses or the effect on pension cost resulting from changed actuarial assumptions. Contractor G's method is not an immediate-gain cost method and does not comply with the provisions of 9904.412–50(b)(1).

(2) For several years Contractor H has had an unfunded nonqualified pension plan which provides for payments of $200 a month to employees after retirement. The contractor is currently making such payments to several retired employees and recognizes those payments as its pension cost. The contractor paid monthly annuity benefits totaling $24,000 during the current year. During the prior year, Contractor H made lump sum payments to irrevocably settle the benefit liability of several participants with small benefits. The annual installment to amortize these lump sum payments over fifteen years at the valuation interest rate assumption is $5,000. Since the plan does not meet the criteria set forth in 9904.412–50(c)(3)(ii), pension cost must be accounted for using the pay-as-you-go cost method. Pursuant to 9904.412–50(b)(3), the amount of assignable cost allocable to cost objectives of that period is $29,000, which is the sum of the amount of benefits actually paid in that period ($24,000) plus the second annual installment to amortize the prior year's lump sum settlements ($5,000).

(3) Contractor I has two qualified defined-benefit pension plans that provide for fixed dollar payments to hourly employees. Under the first plan, the contractor's actuary believes that the contractor will be required to increase the level of benefits by specified percentages over the next several years. In calculating pension costs, the contractor may not assume future benefits greater than that currently required by the plan. With regard to the second plan, a collective bargaining agreement negotiated with the employees' labor union provides that pension benefits will increase by specified percentages over the next several years. Because the improved benefits are required to be made, the contractor can consider such increased benefits in computing pension costs for the current cost accounting period in accordance with 9904.412–50(b)(5).

(4) In addition to the facts of 9904.412–60(b)(3), assume that Contractor I was required to contribute at a higher level for ERISA purposes because the plan was underfunded. To compute pension costs that are closer to the funding requirements of ERISA, Contractor I decides to "fresh start" the unfunded actuarial liability being amortized pursuant to 9904.412–50(a)(1); i.e., treat the entire amount as a newly established portion of unfunded actuarial liability, which is amortized over 10 years in accordance with 9904.412–50(a)(1)(ii). Because the contractor has changed the periods for amortizing the unfunded actuarial liability established pursuant to 9904.412–50(a)(3), the contractor has made a change in accounting practice subject to the provisions of Cost Accounting Standard 9903.302.

(c) *Assignment of pension cost.* (1) Contractor J maintains a qualified defined-benefit pension plan. The actuarial value of the assets of $18 million is subtracted from the actuarial accrued liability of $20 million to determine the total unfunded actuarial liability of $2 million. Pursuant to 9904.412–50(a)(1), Contractor J has identified and is amortizing twelve separate portions of unfunded actuarial liabilities. The sum of the unamortized balances for the twelve separately maintained portions of unfunded actuarial liability equals $1.8 million. In accordance with 9904.412–50(a)(2), the contractor has separately identified, and eliminated from the computation of pension cost, $200,000 attributable to a pension cost assigned to a prior period that was not funded. The sum of the twelve amortization bases maintained pursuant to 9904.412–50(a)(1) and the amount separately identified under 9904.412–50(a)(2) equals $2 million ($1,800,000+200,000). Because the sum of all identified portions of unfunded actuarial liability equals the total unfunded actuarial liability, the plan is in actuarial balance and Contractor J can assign pension cost to the current cost accounting period in accordance with 9904.412–40(c).

(2) Contractor K's pension cost computed for 1996, the current year, is $1.5 million. This computed cost is based on the components of pension cost described in 9904.412–40(a) and 9904.412–50(a) and is measured in accordance with 9904.412–40(b) and 9904.412–50(b). The assignable cost limitation, which is defined at 9904.412–30(a)(9), is $1.3 million. In accordance with the provisions of 9904.412–50(c)(2)(ii)(A), Contractor K's assignable pension cost for 1996 is limited to $1.3 million. In addition, all amounts that were previously being amortized pursuant to 9904.412–50(a)(1) and 9904.413–50(a) are considered fully amortized in accordance with 9904.412–50(c)(2)(ii)(B). The following year, 1997, Contractor K computes an unfunded actuarial liability of $4 million. Contractor K has not changed his actuarial assumptions nor amended the provisions of his pension plan. Contractor K has not had any pension costs disallowed or unfunded in prior periods. Contractor K must treat the entire $4 million of unfunded actuarial liability as an actuarial loss to be amortized over fifteen years beginning in 1997 in accordance with 9904.412–50(c)(2)(ii)(C).

(3) Assume the same facts shown in illustration 9904.412–60(c)(2), except that in 1995, the prior year, Contractor K's assignable pension cost was $800,000, but Contractor K only funded and allocated $600,000. Pursuant to 9904.412–50(a)(2), the $200,000 of unfunded assignable pension cost was separately identified and eliminated from other portions of unfunded actuarial liability. This portion of unfunded actuarial liability was adjusted for 8% interest, which is the interest assumption for 1995 and 1996, and was brought forward to 1996 in accordance with 9904.412–50(a)(2). Therefore, $216,000 ($200,000x1.08) is excluded from the amount considered fully amortized in 1996. The next year, 1997, Contractor K must eliminate $233,280 ($216,000x1.08) from the $4 million so that only $3,766,720 is treated as an actuarial loss in accordance with 9904.412–50(c)(2)(ii)(C).

(4) Assume, as in 9904.412–60(c)(2), the 1996 pension cost computed for Contractor K's qualified defined-benefit pension plan is $1.5 million and the assignable cost limitation is $1.7

million. However, because of the ERISA limitation on tax-deductible contributions, Contractor K cannot fund more than $1 million without incurring an excise tax, which 9904.412–50(a)(5) does not permit to be a component of pension cost. In accordance with the provisions of 9904.412–50(c)(2)(iii), Contractor K's assignable pension cost for the period is limited to $1 million. The $500,000 ($1.5 million – $1 million) of pension cost not funded is reassigned to the next ten cost accounting periods beginning in 1997 as an assignable cost deficit in accordance with 9904.412–50(a)(1)(vi).

(5) Assume the same facts for Contractor K in 9904.412–60(c)(4), except that the accumulated value of prepayment credits equals $700,000. Therefore, in addition to the $1 million, Contractor K can apply $500,000 of the accumulated value of prepayment credits towards the pension cost computed for the period. In accordance with the provisions of 9904.412–50(c)(2)(iii), Contractor K's assignable pension cost for the period is the full $1.5 million ($1 million+$500,000) computed for the period. The $200,000 of remaining accumulated value of prepayment credits ($700,000 – $500,000) is adjusted for interest at the valuation rate and carried forward until needed in future accounting periods in accordance with 9904.412–50(a)(4).

(6) Assume the same facts for Contractor K in 9904.412–60(c)(4), except that the 1996 assignable cost limitation is $1.3 million. Pension cost of $1.5 million is computed for the cost accounting period, but the assignable cost is limited to $1.3 million in accordance with 9904.412–50(c)(2)(ii)(A). Pursuant to 9904.412–50(c)(2)(ii)(B), all existing amortization bases maintained in accordance with subparagraph 9904.412–50(a)(1) are considered fully amortized. The assignable cost of $1.3 million is then compared to the maximum tax-deductible amount of $1 million. Pursuant to 9904.412–50(c)(2)(iii), Contractor K's assignable pension cost for the period is limited to $1 million. The $300,000 ($1.3 million – $1 million) excess of the assignable cost limitation over the tax-deductible maximum is assigned to future periods as an assignable cost deficit.

(7) Contractor L is currently amortizing a large decrease in unfunded actuarial liability over a period of ten years. A similarly large increase in unfunded actuarial liability is being amortized over 30 years. The absolute value of the resultant net amortization credit is greater than the normal cost so that the pension cost computed for the period is a negative $200,000. Contractor L first applies the provisions of 9904.412–50(c)(2)(i) and determines the assignable pension cost is $0. The negative pension cost of $200,000 is assigned to the next ten cost accounting periods as an assignable cost credit in accordance with 9904.412–50(a)(1)(vi). However, when Contractor L applies the provisions of 9904.412–50(c)(2)(ii), the assignable cost limitation is also $0. Because the assignable cost of $0 determined under 9904.412–50(c)(2)(i) is equal to the assignable cost limitation, the assignable cost credit of $200,000 is considered fully amortized along with all other portions of unfunded actuarial liability being amortized pursuant to 9904.412–50(a)(1). Conversely, if the assignable cost limitation had been greater than zero, the assignable cost credit of $200,000 would have carried-forward and amortized in future periods.

(8) Contractor M has a qualified defined-benefit pension plan which is funded through a funding agency. It computes $1 million of pension cost for a cost accounting period. However, pursuant to a waiver granted under the provisions of ERISA, Contractor M is required to fund only $800,000. Under the provisions of 9904.412–50(c)(5), the remaining $200,000 shall be accounted for as an assignable cost deficit and assigned to the next five cost accounting periods in accordance with the terms of the waiver.

(9) Contractor N has a company-wide defined-benefit pension plan, wherein benefits are calculated on one consistently applied formula. That part of the formula defining benefits within ERISA limits is administered and reported as a qualified plan and funded through a funding agency. The remainder of the benefits are considered to be a supplemental or excess plan which, while it meets the criteria at 9904.412–50(c)(3)(iii) as to nonforfeitability and communication, is not funded. The costs of the qualified portion of the plan shall be comprised of those elements of costs delineated at 9904.412–40(a)(1), while the supplemental or excess portion of the plan shall be accounted for and assigned to cost accounting periods under the pay-as-you-go cost method provided at 9904.412–40(a)(3) and 9904.412–50(c)(4).

(10) Assuming the same facts as in 9904.412–60(c)(9), except that Contractor N funds its supplemental or excess plan using a so-called "Rabbi Trust" vehicle. Because the nonqualified plan is funded, the plan meets the criteria set forth at 9904.412–50(c)(3)(ii). Contractor N may account for the supplemental or excess plan in the same manner as its qualified plan, if it elects to do so pursuant to 9904.412–50(c)(3)(i).

(11) Assuming the same facts as in 9904.412–60(c)(10), except that under the nonqualified portion of the pension plan a former employee will forfeit his pension benefit if the employee goes to work for a competitor within three years of terminating employment. Since the right to a benefit cannot be affected by the unilateral action of the contractor, the right to a benefit is considered to be nonforfeitable for purposes of 9904.412–30(a)(17). The nonqualified plan still meets the criteria set forth at 9904.412–50(c)(3)(iii), and Contractor N may account for the supplemental or excess plan in the same manner as its qualified plan, if it elects to do so.

(12) Assume the same facts as in 9904.412–60(c)(11), except that Contractor N, while maintaining a "Rabbi Trust" funding vehicle elects to have the plan accounted for under the pay-as-you-go cost method so as to have greater latitude in annual funding decisions. It may so elect pursuant to 9904.412–50(c)(3)(i).

(13) The assignable pension cost for Contractor O's qualified defined-benefit plan is $600,000. For the same period Contractor O contributes $700,000, which is the minimum funding requirement under ERISA. In addition, there exists $75,000 of unfunded actuarial liability that has been separately identified pursuant to 9904.412–50(a)(2). Contractor O may use $75,000 of the contribution in excess of the assignable pension cost to fund this separately identified unfunded actuarial liability, if he so chooses. The effect of the funding is to eliminate the unassignable $75,000 portion of unfunded actuarial liability that had been separately identified and thereby eliminated from the computation of pension costs. Contractor O shall then account for the remaining $25,000 of excess contribution as a prepayment credit in accordance with 9904.412–50(a)(4).

(d) *Allocation of pension cost.* (1) Assume the same set of facts for Contractor M in 9904.412–60(c)(8) except there was no ERISA waiver; i.e., only $800,000 was funded against $1 million of assigned pension cost for the period. Under the provisions of 9904.412–50(d)(1), only $800,000 may be allocated to Contractor M's intermediate and final cost objectives. The remaining $200,000 of assigned cost, which has not been funded, shall be separately identified and maintained in accordance with 9904.412–50(a)(2) so

that it will not be reassigned to any future accounting periods.

(2) Contractor P has a nonqualified defined-benefit pension plan which covers benefits in excess of the ERISA limits. Contractor P has elected to account for this plan in the same manner as its qualified plan and, therefore, has established a "Rabbi Trust" as the funding agency. For the current cost accounting period, the contractor computes and assigns $100,000 as pension cost. The contractor funds $65,000, which is equivalent to a funding level equal to the complement of the highest published Federal corporate income tax rate of 35%. Under the provisions of 9904.412–50(d)(2), the entire $100,000 is allocable to cost objectives of the period.

(3) Assume the set of facts in 9904.412–60(d)(2), except that Contractor P's contribution to the Trust is $59,800. In that event, the provisions of 9904.412–50(d)(2)(i) would limit the amount of assigned cost allocable within the cost accounting period to the percentage of cost funded (i.e., $59,800/ $65,000 = 92%). This results in allocable cost of $92,000 (92% of $100,000) for the cost accounting period. Under the provisions of 9904.412–40(c) and 9904.412–50(d)(2)(i), respectively, the unallocable $8,000 may not be assigned to any future cost accounting period. In addition, in accordance with 9904.412–50(a)(2), the $8,000 must be separately identified and no amount of interest on such separately identified $8,000 shall be a component of pension cost in any future cost accounting period.

(4) Again, assume the set of facts in 9904.412–60(d)(2) except that, Contractor P's contribution to the Trust is $105,000 based on a valuation interest assumption of 8%. Under the provisions of 9904.412–50(d)(2) the entire $100,000 is allocable to cost objectives of the period. In accordance with the provisions of 9904.412–50(c)(1) Contractor P has funded $5,000 ($105,000—$100,000) in excess of the assigned pension cost for the period. The $5,000 shall be accounted for as a prepayment credit. Pursuant to 9904.412–50(a)(4), the $5,000 shall be adjusted for interest at the 8% valuation rate of interest and excluded from the actuarial value of assets used to compute the next year's pension cost computations. The accumulated value of prepayment credits of $5,400 (5,000 × 1.08) may be used to fund the next year's assigned pension cost, if needed.

(5) Contractor Q maintains a nonqualified defined-benefit pension plan which satisfies the requirements of 9904.412–50(c)(3). As of the valuation date, the reported funding agency balance is $3.4 million excluding any accumulated value of prepayment credits. When the adjusted funding agency balance is added to the accumulated value of permitted unfunded accruals of $1.6 million, the market value of assets equals $5.0 million ($3.4 million + $1.6 million) in accordance with 9904.412–30(a)(13). During the plan year, retirees receive monthly benefits totalling $350,000. Pursuant to 9904.412–50(d)(2)(ii)(A), at least 32% ($1.6 million divided by $5 million) of these benefit payments shall be made from sources other than the funding agency. Contractor Q, therefore, draws $238,000 from the funding agency assets and pays the remaining $112,000 using general corporate funds.

(6) Assume the same facts as 9904.412–60(d)(5), except that by the time Contractor Q receives its actuarial valuation it has paid retirement benefits equalling $288,000 from funding agency assets. The contractor has made deposits to the funding agency equal to the tax complement of the $500,000 assignable pension cost for the period. Pursuant to 9904.412–50(d)(2)(ii)(B), the assignable $500,000 shall be reduced by the $50,000 ($288,000—$238,000) of benefits paid from the funding agency in excess of the permitted $238,000, unless the contractor makes a deposit to replace the $50,000 inadvertently drawn from the funding agency. If this corrective action is not taken within the time permitted by 9904.412–50(d)(4), Contractor Q shall allocate only $450,000 ($500,000–$50,000) to final cost objectives. Furthermore, the $50,000, which was thereby attributed to benefit payments instead of funding, must be separately identified and maintained in accordance with 9904.412–50(a)(2).

(7) Contractor R has a nonqualified defined-benefit plan that meets the criteria of 9904.412–50(c)(3). For 1996, the funding agency balance was $1,250,000 and the accumulated value of permitted unfunded accruals was $600,000. During 1996 the earnings and appreciation on the assets of the funding agency equalled $125,000, benefit payments to participants totalled $300,000, and administrative expenses were $60,000. All transactions occurred on the first day of the period. In accordance with 9904.412–50(d)(2)(ii)(A), $200,000 of benefits were paid from the funding agency and $100,000 were paid directly from corporate assets. Pension cost of $400,000 was assigned to 1996. Based on the current corporate tax rate of 35%, $260,000 ($400,000 × (1–35%)) was deposited into the funding agency at the beginning of 1996. For 1997 the funding agency balance is $1,375,000 ($1,250,000 + $260,000 + $125,000—$200,000—$60,000). The actual annual earnings rate of the funding agency was 10% for 1996. Pursuant to 9904.412–50(d)(2)(iii), the accumulated value of permitted unfunded accruals is updated from 1996 to 1997 by: (i) adding $140,000 (35% × $400,000), which is the unfunded portion of the assigned cost; (ii) subtracting the $100,000 of benefits paid directly by the contractor; and (iii) increasing the value of the assets by $64,000 for imputed earnings at 10% (10% × ($600,000 + $140,000—$100,000)). The accumulated value of permitted unfunded accruals for 1997 is $704,000 ($600,000 + $140,000—$100,000 + $64,000).

7. Subsection 9904.412–63 is revised to read as follows:

**9904.412–63 Effective date.**

(a) This Standard is effective as of March 30, 1995.

(b) This Standard shall be followed by each contractor on or after the start of its next cost accounting period beginning after the receipt of a contract or subcontract to which this Standard is applicable.

(c) Contractors with prior CAS-covered contracts with full coverage shall continue to follow the Standard in 9904.412 in effect prior to March 30, 1995, until this Standard, effective March 30, 1995, becomes applicable following receipt of a contract or subcontract to which this Standard applies.

8. A new subsection 9904.412–64 is added to read as follows:

**9904.412–64 Transition method.**

To be acceptable, any method of transition from compliance with Standard 9904.412 in effect prior to March 30, 1995, to compliance with the Standard effective March 30, 1995, must follow the equitable principle that costs, which have been previously provided for, shall not be redundantly provided for under revised methods. Conversely, costs that have not previously been provided for must be provided for under the revised method. This transition subsection is not intended to qualify for purposes of assignment or allocation, pension costs which have previously been disallowed for reasons other than ERISA tax-deductibility limitations. The sum of all portions of unfunded actuarial liability identified pursuant to Standard 9904.412, effective March 30, 1995, including such portions of unfunded actuarial liability determined for transition purposes, is subject to the

provisions of 9904.412–40(c) on requirements for assignment. The method, or methods, employed to achieve an equitable transition shall be consistent with the provisions of Standard 9904.412, effective March 30, 1995, and shall be approved by the contracting officer. Examples and illustrations of such transition methods include, but are not limited to, the following:

(a) *Reassignment of certain prior unfunded accruals.*

(1) Any portion of pension cost for a qualified defined-benefit pension plan, assigned to a cost accounting period prior to [insert date of publication in the **Federal Register**], which was not funded because such cost exceeded the maximum tax-deductible amount, determined in accordance with ERISA, shall be assigned to subsequent accounting periods, including an adjustment for interest, as an assignable cost deficit. However, such costs shall be assigned to periods on or after March 30, 1995, only to the extent that such costs have not previously been allocated as cost or price to contracts subject to this Standard.

(2) Alternatively, the transition method described in paragraph (d) of this subsection may be applied separately to costs subject to paragraph (a)(1) of this subsection.

(b) *Reassignment of certain prior unallocated credits.*

(1) Any portion of pension cost for a defined-benefit pension plan, assigned to a cost accounting period prior to March 30, 1995, which was not allocated as a cost or price credit to contracts subject to this Standard because such cost was less than zero, shall be assigned to subsequent accounting periods, including an adjustment for interest, as an assignable cost credit.

(2) Alternatively, the transition method described in paragraph (d) of this subsection may be applied separately to costs subject to paragraph (b)(1) of this subsection.

(c) *Accounting for certain prior allocated unfunded accruals.* Any portion of unfunded pension cost for a nonqualified defined-benefit pension plan, assigned to a cost accounting period prior to March 30, 1995, that was allocated as cost or price to contracts subject to this Standard, shall be recognized in subsequent accounting periods, including adjustments for imputed interest and benefit payments, as an accumulated value of permitted unfunded accruals.

(d) *"Fresh start" alternative transition method.* The transition methods of paragraphs (a)(1), (b)(1), and (c) of this subsection may be implemented using the so-called "fresh start" method whereby a portion of the unfunded actuarial liability of a defined-benefit pension plan, which occurs in the first cost accounting period after March 30, 1995, shall be treated in the same manner as an actuarial gain or loss. Such portion of unfunded actuarial liability shall exclude any portion of unfunded actuarial liability that must continue to be separately identified and maintained in accordance with 9904.412–50(a)(2), including interest adjustments. If the contracting officer already has approved a different amortization period for the fresh start amortization, then such amortization period shall continue.

(e) *Change to pay-as-you-go method.* A change in accounting method subject to 9903.302 will have occurred whenever costs of a nonqualified defined-benefit pension plan have been accounted for on an accrual basis prior to March 30, 1995, and the contractor must change to the pay-as-you-go cost method because the plan does not meet the requirement of 9904.412–50(c)(3), either by election or otherwise. In such case, any portion of unfunded pension cost, assigned to a cost accounting period prior to March 30, 1995 that was allocated as cost or price to contracts subject to this Standard, shall be assigned to future accounting periods, including adjustments for imputed interest and benefit payments, as an accumulated value of permitted unfunded accruals. Costs computed under the pay-as-you-go cost method shall be charged against such accumulated value of permitted unfunded accruals before such costs may be allocated to contracts.

(f) *Actuarial assumptions.* The actuarial assumptions used to calculate assignable cost deficits, assignable cost credits, or accumulated values of permitted unfunded accruals for transition purposes shall be consistent with the long term assumptions used for valuation purposes for such prior periods unless the contracting officer has previously approved the use of other reasonable assumptions.

(g) *Transition illustrations.* Unless otherwise noted, paragraphs (g) (1) through (9) of this subsection address pension costs and transition amounts determined for the first cost accounting period beginning on or after the date this revised Standard becomes applicable to a contractor. For purposes of these illustrations an interest assumption of 7% is presumed to be in effect for all periods.

(1) For the cost accounting period immediately preceding the date this revised Standard was applicable to a contractor, Contractor S computed and assigned pension cost of $1 million for a qualified defined-benefit pension plan. The contractor made a contribution equal to the maximum tax-deductible amount of $800,000 for the period leaving $200,000 of assigned cost unfunded for the period. Except for this $200,000, no other assigned pension costs have ever been unfunded or otherwise disallowed. Using the transition method of paragraph (a)(1) of this subsection, the contractor shall establish an assignable cost deficit equal to $214,000 ($200,000 × 1.07), which is the prior unfunded assigned cost plus interest. If this assignable cost deficit amount, plus all other portions of unfunded actuarial liability identified in accordance with 9904.412–50(a) (1) and (2), equal the total unfunded actuarial liability, pension cost may be assigned to the current period.

(2) Assume that Contractor S in 9904.412–64(g)(1) priced the entire $1 million into firm fixed-price contracts. In this case, no assignable cost deficit amount may be established. In addition, the $214,000 ($200,000 × 1.07) shall be separately identified and maintained in accordance with 9904.412–50(a)(2). If all portions of unfunded actuarial liability identified in accordance with 9904.412–50(a) (1) and (2), equal the total unfunded actuarial liability, pension cost may be assigned to the period.

(3) Assume the same facts as in 9904.412–64(g)(1), except Contractor S only funded and allocated $500,000. The $300,000 of assigned cost that was not funded, but could have been funded without exceeding the tax-deductible maximum, may not be recognized as an assignable cost deficit. Instead, the $300,000 must be separately identified and maintained in accordance with 9904.412–50(a)(2). If the $321,000 ($300,000 × 1.07) plus the $214,000 already identified as an assignable cost deficit plus all other portions of unfunded actuarial liability identified in accordance with 9904.412–50(a) (1) and (2), equal the total unfunded actuarial liability, pension cost may be assigned to the period.

(4) Assume that, for Contractor S in 9904.412–64(g)(3), the only portion of unfunded actuarial liability that must be identified under 9904.412–50(a)(2) is the $321,000. If Contractor S chooses to use the "fresh start" transition method, the $321,000 of unfunded assigned cost must be subtracted from the total unfunded actuarial liability in accordance with 9904.412–63(d). The net amount of unfunded actuarial liability shall then be amortized over a

period of fifteen years as an actuarial loss in accordance with 9904.412–50(a)(1)(v) and Cost Accounting Standard 9904.413.

(5) For the cost accounting period immediately preceding the date this revised Standard becomes applicable to a contractor, Contractor T computed and assigned pension cost of negative $400,000 for a qualified defined-benefit plan. Because the contractor could not withdraw assets from the trust fund, the contracting officer agreed that instead of allocating a current period credit to contracts, the negative costs would be carried forward, with interest, and offset against future pension costs allocated to the contract. Using the transition method of paragraph (b)(1) of this subsection, the contractor shall establish an assignable cost credit equal to $428,000 ($400,000 × 1.07). If this assignable cost credit amount, plus all other portions of unfunded actuarial liability identified in accordance with 9904.412–50(a) (1) and (2), equals the total unfunded actuarial liability, pension cost may be assigned to the period.

(6) Assume that in 9904.412–64(g)(5), following guidance issued by the contracting agency the contracting officer had deemed the cost for the prior period to be $0. In order to satisfy the requirements of 9904.412–40(c) and assign pension cost to the current period, Contractor S must account for the prior period negative accruals that have not been specifically identified. Following the transition method of paragraph (b)(1) of this subsection, the contractor shall identify $428,000 as an assignable cost credit.

(7) Assume the facts of 9904.412–64(g)(5), except Contractor S uses the "fresh start" transition method. In addition, for the current period the plan is overfunded since the actuarial value of the assets is greater than the actuarial accrued liability. In this case, an actuarial gain equal to the negative unfunded actuarial liability; i.e., actuarial surplus, is recognized since there are no portions of unfunded actuarial liability that must be identified under 9904.412–50(a)(2).

(8) Since March 28, 1989 Contractor U has computed, assigned, and allocated pension costs for a nonqualified defined-benefit plan on an accrual basis. The value of these past accruals, increased for imputed interest at 7% and decreased for benefits paid by the contractor, is equal to $2 million as of the beginning of the current period. Contractor U elects to establish a "Rabbi trust" and the plan meets the other criteria at 9904.412–50(c)(3). Using the transition method of paragraph (c) of this subsection, Contractor U shall recognize the $2 million as the accumulated value of permitted unfunded accruals, which will then be included in the market value and actuarial value of the assets. Because the accumulated value of permitted unfunded accruals is exactly equal to the current period market value of the assets, 100% of benefits for the current period must be paid from sources other than the funding agency in accordance with 9904.412–50(d)(2)(ii).

(9) Assume that Contractor U in 9904.412–64(g)(8) establishes a funding agency, but elects to use the pay-as-you-go method for current and future pension costs. Furthermore, plan participants receive $500,000 in benefits on the last day of the current period. Using the transition method of paragraph (e) of this subsection to ensure prior costs are not redundantly provided for, the contractor shall establish assets; i.e., an accumulated value of permitted unfunded accruals, of $2 million. Since these assets are sufficient to provide for the current benefit payments, no pension costs can be allocated in this period. Furthermore, previously priced contracts subject to this Standard shall be adjusted in accordance with 9903.302. The accumulated value of permitted unfunded accruals shall be carried forward to the next period by adding $140,000 (7% x $2 million) of imputed interest, and subtracting the $500,000 of benefit payments made by the contractor. The accumulated value of permitted unfunded accruals for the next period equals $1,640,000 ($2 million + $140,000—$500,000).

**9904.413 [Amended]**

9. Subsection 9904.413–30 is amended by revising paragraph (a) to read as follows:

**9904.413–30 Definitions.**

(a) The following are definitions of terms which are prominent in this Standard. Other terms defined elsewhere in this chapter 99 shall have the meaning ascribed to them in those definitions unless paragraph (b) of this subsection requires otherwise.

(1) *Accrued benefit cost method* means an actuarial cost method under which units of benefits are assigned to each cost accounting period and are valued as they accrue; that is, based on the services performed by each employee in the period involved. The measure of normal cost under this method for each cost accounting period is the present value of the units of benefit deemed to be credited to employees for service in that period. The measure of the actuarial accrued liability at a plan's inception date is the present value of the units of benefit credited to employees for service prior to that date. (This method is also known as the Unit Credit cost method without salary projection.)

(2) *Actuarial accrued liability* means pension cost attributable, under the actuarial cost method in use, to years prior to the current period considered by a particular actuarial valuation. As of such date, the actuarial accrued liability represents the excess of the present value of future benefits and administrative expenses over the present value of future normal costs for all plan participants and beneficiaries. The excess of the actuarial accrued liability over the actuarial value of the assets of a pension plan is the Unfunded Actuarial Liability. The excess of the actuarial value of the assets of a pension plan over the actuarial accrued liability is an actuarial surplus and is treated as a negative unfunded actuarial liability.

(3) *Actuarial assumption* means an estimate of future conditions affecting pension cost; for example, mortality rate, employee turnover, compensation levels, earnings on pension plan assets, changes in values of pension plan assets.

(4) *Actuarial cost method* means a technique which uses actuarial assumptions to measure the present value of future pension benefits and pension plan administrative expenses, and which assigns the cost of such benefits and expenses to cost accounting periods. The actuarial cost method includes the asset valuation method used to determine the actuarial value of the assets of a pension plan.

(5) *Actuarial gain and loss* means the effect on pension cost resulting from differences between actuarial assumptions and actual experience.

(6) *Actuarial valuation* means the determination, as of a specified date, of the normal cost, actuarial accrued liability, actuarial value of the assets of a pension plan, and other relevant values for the pension plan.

(7) *Curtailment of benefits* means an event; e.g., a plan amendment, in which the pension plan is frozen and no further material benefits accrue. Future service may be the basis for vesting of nonvested benefits existing at the time of the curtailment. The plan may hold assets, pay benefits already accrued, and receive additional contributions for unfunded benefits. Employees may or may not continue working for the contractor.

(8) *Funding agency* means an organization or individual which provides facilities to receive and

accumulate assets to be used either for the payment of benefits under a pension plan, or for the purchase of such benefits, provided such accumulated assets form a part of a pension plan established for the exclusive benefit of the plan participants and their beneficiaries. The fair market value of the assets held by the funding agency as of a specified date is the Funding Agency Balance as of that date.

(9) *Immediate-gain actuarial cost method* means any of the several cost methods under which actuarial gains and losses are included as part of the unfunded actuarial liability of the pension plan, rather than as part of the normal cost of the plan.

(10) *Market value of the assets* means the sum of the funding agency balance plus the accumulated value of any permitted unfunded accruals belonging to a pension plan. The Actuarial Value of the Assets means the value of cash, investments, permitted unfunded accruals, and other property belonging to a pension plan, as used by the actuary for the purpose of an actuarial valuation.

(11) *Normal cost* means the annual cost attributable, under the actuarial cost method in use, to current and future years as of a particular valuation date, excluding any payment in respect of an unfunded actuarial liability.

(12) *Pension plan* means a deferred compensation plan established and maintained by one or more employers to provide systematically for the payment of benefits to plan participants after their retirement, provided that the benefits are paid for life or are payable for life at the option of the employees. Additional benefits such as permanent and total disability and death payments, and survivorship payments to beneficiaries of deceased employees may be an integral part of a pension plan.

(13) *Pension plan participant* means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit from a pension plan which covers employees of such employer or members of such organization who have satisfied the plan's participation requirements, or whose beneficiaries are receiving or may be eligible to receive any such benefit. A participant whose employment status with the employer has not been terminated is an active participant of the employer's pension plan.

(14) *Pension plan termination* means an event; i.e., plan amendment, in which either the pension plan ceases to exist and all benefits are settled by purchase of annuities or other means, or the trusteeship of the plan is assumed by the Pension Benefit Guarantee Corporation or other conservator. The plan may or may not be replaced by another plan.

(15) *Permitted unfunded accruals* means the amount of pension cost for nonqualified defined-benefit pension plans that is not required to be funded under 9904.412–50(d)(2). The Accumulated Value of Permitted Unfunded Accruals means the value, as of the measurement date, of the permitted unfunded accruals adjusted for imputed earnings and for benefits paid by the contractor.

(16) *Prepayment credit* means the amount funded in excess of the pension cost assigned to a cost accounting period that is carried forward for future recognition. The Accumulated Value of Prepayment Credits means the value, as of the measurement date, of the prepayment credits adjusted for interest at the valuation rate and decreased for amounts used to fund pension costs or liabilities, whether assignable or not.

(17) *Projected benefit cost method* means either (i) any of the several actuarial cost methods which distribute the estimated total cost of all of the employees' prospective benefits over a period of years, usually their working careers, or (ii) a modification of the accrued benefit cost method that considers projected compensation levels.

(18) *Qualified pension plan* means a pension plan comprising a definite written program communicated to and for the exclusive benefit of employees which meets the criteria deemed essential by the Internal Revenue Service as set forth in the Internal Revenue Code for preferential tax treatment regarding contributions, investments, and distributions. Any other plan is a nonqualified pension plan.

(19) *Segment* means one of two or more divisions, product departments, plants, or other subdivisions of an organization reporting directly to a home office, usually identified with responsibility for profit and/or producing a product or service. The term includes Government-owned contractor-operated (GOCO) facilities, and joint ventures and subsidiaries (domestic and foreign) in which the organization has a majority ownership. The term also includes those joint ventures and subsidiaries (domestic and foreign) in which the organization has less than a majority ownership, but over which it exercises control.

(20) *Segment closing* means that a segment has (i) been sold or ownership has been otherwise transferred, (ii) discontinued operations, or (iii) discontinued doing or actively seeking Government business under contracts subject to this Standard.

(21) *Termination of employment gain or loss* means an actuarial gain or loss resulting from the difference between the assumed and actual rates at which plan participants separate from employment for reasons other than retirement, disability, or death.

(b) * * *

10. Subsection 9904.413–40 is amended by revising paragraphs (b) and (c) to read as follows:

**9904.413–40 Fundamental requirement.**

(a) * * *

(b) *Valuation of the assets of a pension plan.* The actuarial value of the assets of a pension plan shall be determined under an asset valuation method which takes into account unrealized appreciation and depreciation of the market value of the assets of the pension plan, including the accumulated value of permitted unfunded accruals, and shall be used in measuring the components of pension costs.

(c) *Allocation of pension cost to segments.* Contractors shall allocate pension costs to each segment having participants in a pension plan. A separate calculation of pension costs for a segment is required when the conditions set forth in 9904.413–50(c)(2) or (3) are present. When these conditions are not present, allocations may be made by calculating a composite pension cost for two or more segments and allocating this cost to these segments by means of an allocation base. When pension costs are separately computed for a segment or segments, the provisions of Cost Accounting Standard 9904.412 regarding the assignable cost limitation shall be based on the assets and liabilities for the segment or segments for purposes of such computations. In addition, the amount of pension cost assignable to a segment or segments shall not exceed the maximum tax-deductible amount computed for the plan as a whole and apportioned among the segment(s).

11. Subsection 9904.413–50 is revised to read as follows:

**9904.413–50 Techniques for application.**

(a) *Assignment of actuarial gains and losses.* (1) In accordance with the provisions of Cost Accounting Standard 9904.412, actuarial gains and losses shall be identified separately from other unfunded actuarial liabilities.

(2) Actuarial gains and losses determined under a pension plan whose

costs are measured by an immediate-gain actuarial cost method shall be amortized over a 15 year period in equal annual installments, beginning with the date as of which the actuarial valuation is made. The installment for a cost accounting period shall consist of an element for amortization of the gain or loss plus an element for interest on the unamortized balance at the beginning of the period. If the actuarial gain or loss determined for a cost accounting period is not material, the entire gain or loss may be included as a component of the current or ensuing year's pension cost.

(3) Pension plan terminations and curtailments of benefits shall be subject to adjustment in accordance with 9904.413–50(c)(12).

(b) *Valuation of the assets of a pension plan.* (1) The actuarial value of the assets of a pension plan shall be used:

(i) In measuring actuarial gains and losses, and

(ii) For purposes of measuring other components of pension cost.

(2) The actuarial value of the assets of a pension plan may be determined by the use of any recognized asset valuation method which provides equivalent recognition of appreciation and depreciation of the market value of the assets of the pension plan. However, the actuarial value of the assets produced by the method used shall fall within a corridor from 80 to 120 percent of the market value of the assets, determined as of the valuation date. If the method produces a value that falls outside the corridor, the actuarial value of the assets shall be adjusted to equal the nearest boundary of the corridor.

(3) The method selected for valuing pension plan assets shall be consistently applied from year to year within each plan.

(4) The provisions of paragraphs (b)(1) through (3) of this subsection are not applicable to plans that are treated as defined-contribution plans in accordance with 9904.412–50(a)(6).

(5) The market and actuarial values of the assets of a pension plan shall not be adjusted for any fee, reserve charge, or other investment charge for withdrawals from or termination of an investment contract, trust agreement, or other funding arrangement, unless such fee is determined in an arm's length transaction, and actually incurred and paid.

(c) *Allocation of pension cost to segments.* (1) For contractors who compute a composite pension cost covering plan participants in two or more segments, the base to be used for allocating such costs shall be representative of the factors on which the pension benefits are based. For example, a base consisting of salaries and wages shall be used for pension costs that are calculated as a percentage of salaries and wages; a base consisting of the number of participants shall be used for pension costs that are calculated as an amount per participant. If pension costs are separately calculated for one or more segments, the contractor shall make a distribution among the segments for the maximum tax-deductible amount and the contribution to the funding agency as follows:

(i) When apportioning the maximum tax-deductible amount, which is determined for a qualified defined-benefit pension plan as a whole pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. 1001 *et seq.*, as amended, to segments, the contractor shall use a base that considers the otherwise assignable pension costs or the funding levels of the individual segments.

(ii) When apportioning amounts deposited to a funding agency to segments, contractors shall use a base that is representative of the assignable pension costs, determined in accordance with 9904.412–50(c) for the individual segments. However, for qualified defined-benefit pension plans, the contractor may first apportion amounts funded to the segment or segments subject to this Standard.

(2) Separate pension cost for a segment shall be calculated whenever any of the following conditions exist for that segment, provided that such condition(s) materially affect the amount of pension cost allocated to the segment:

(i) There is a material termination of employment gain or loss attributable to the segment,

(ii) The level of benefits, eligibility for benefits, or age distribution is materially different for the segment than for the average of all segments, or

(iii) The appropriate actuarial assumptions are, in the aggregate, materially different for the segment than for the average of all segments. Calculations of termination of employment gains and losses shall give consideration to factors such as unexpected early retirements, benefits becoming fully vested, and reinstatements or transfers without loss of benefits. An amount may be estimated for future reemployments.

(3) Pension cost shall also be separately calculated for a segment under circumstances where—

(i) The pension plan for that segment becomes merged with that of another segment, or the pension plan is divided into two or more pension plans, and in either case,

(ii) The ratios of market value of the assets to actuarial accrued liabilities for each of the merged or separated plans are materially different from one another after applying the benefits in effect after the pension plan merger or pension plan division.

(4) For a segment whose pension costs are required to be calculated separately pursuant to paragraphs (c) (2) or (3) of this subsection, such calculations shall be prospective only; pension costs need not be redetermined for prior years.

(5) For a segment whose pension costs are either required to be calculated separately pursuant to paragraph (c)(2) or (c)(3) of this subsection or calculated separately at the election of the contractor, there shall be an initial allocation of a share in the undivided market value of the assets of the pension plan to that segment, as follows:

(i) If the necessary data are readily determinable, the funding agency balance to be allocated to the segment shall be the amount contributed by, or on behalf of, the segment, increased by income received on such assets, and decreased by benefits and expenses paid from such assets. Likewise, the accumulated value of permitted unfunded accruals to be allocated to the segment shall be the amount of permitted unfunded accruals assigned to the segment, increased by interest imputed to such assets, and decreased by benefits paid from sources other than the funding agency; or

(ii) If the data specified in paragraph (c)(5)(i) of this subsection are not readily determinable for certain prior periods, the market value of the assets of the pension plan shall be allocated to the segment as of the earliest date such data are available. Such allocation shall be based on the ratio of the actuarial accrued liability of the segment to the plan as a whole, determined in a manner consistent with the immediate gain actuarial cost method or methods used to compute pension cost. Such assets shall be brought forward as described in paragraph (c)(7) of this subsection.

(iii) The actuarial value of the assets of the pension plan shall be allocated to the segment in the same proportion as the market value of the assets.

(6) If, prior to the time a contractor is required to use this Standard, it has been calculating pension cost separately for individual segments, the amount of assets previously allocated to those segments need not be changed.

(7) After the initial allocation of assets, the contractor shall maintain a record of the portion of subsequent

contributions, permitted unfunded accruals, income, benefit payments, and expenses attributable to the segment and paid from the assets of the pension plan: Income and expenses shall include a portion of any investment gains and losses attributable to the assets of the pension plan. Income and expenses of the pension plan assets shall be allocated to the segment in the same proportion that the average value of assets allocated to the segment bears to the average value of total pension plan assets for the period for which income and expenses are being allocated.

(8) If plan participants transfer among segments, contractors need not transfer assets or actuarial accrued liabilities unless a transfer is sufficiently large to distort the segment's ratio of pension plan assets to actuarial accrued liabilities determined using the accrued benefit cost method. If assets and liabilities are transferred, the amount of assets transferred shall be equal to the actuarial accrued liabilities, determined using the accrued benefit cost method, transferred.

(9) Contractors who separately calculate the pension cost of one or more segments may calculate such cost either for all pension plan participants assignable to the segment(s) or for only the active participants of the segment(s). If costs are calculated only for active participants, a separate segment shall be created for all of the inactive participants of the pension plan and the cost thereof shall be calculated. When a contractor makes such an election, assets shall be allocated to the segment for inactive participants in accordance with paragraphs (c) (5), (6), and (7) of this subsection. When an employee of a segment becomes inactive, assets shall be transferred from that segment to the segment established to accumulate the assets and actuarial liabilities for the inactive plan participants. The amount of assets transferred shall be equal to the actuarial accrued liabilities, determined under the accrued benefit cost method, for these inactive plan participants. If inactive participants become active, assets and liabilities shall similarly be transferred to the segments to which the participants are assigned. Such transfers need be made only as of the last day of a cost accounting period. The total annual pension cost for a segment having active employees shall be the amount calculated for the segment plus an allocated portion of the pension cost calculated for the inactive participants. Such an allocation shall be on the same basis as that set forth in paragraph (c)(1) of this subsection.

(10) Where pension cost is separately calculated for one or more segments, the actuarial cost method used for a plan shall be the same for all segments. Unless a separate calculation of pension cost for a segment is made because of a condition set forth in paragraph (c)(2)(iii) of this subsection, the same actuarial assumptions may be used for all segments covered by a plan.

(11) If a pension plan has participants in the home office of a company, the home office shall be treated as a segment for purposes of allocating the cost of the pension plan. Pension cost allocated to a home office shall be a part of the costs to be allocated in accordance with the appropriate requirements of Cost Accounting Standard 9904.403.

(12) If a segment is closed, if there is a pension plan termination, or if there is a curtailment of benefits, the contractor shall determine the difference between the actuarial accrued liability for the segment and the market value of the assets allocated to the segment, irrespective of whether or not the pension plan is terminated. The difference between the market value of the assets and the actuarial accrued liability for the segment represents an adjustment of previously-determined pension costs.

(i) The determination of the actuarial accrued liability shall be made using the accrued benefit cost method. The actuarial assumptions employed shall be consistent with the current and prior long term assumptions used in the measurement of pension costs. If there is a pension plan termination, the actuarial accrued liability shall be measured as the amount paid to irrevocably settle all benefit obligations or paid to the Pension Benefit Guarantee Corporation.

(ii) In computing the market value of assets for the segment, if the contractor has not already allocated assets to the segment, such an allocation shall be made in accordance with the requirements of paragraphs (c)(5) (i) and (ii) of this subsection. The market value of the assets shall be reduced by the accumulated value of prepayment credits, if any. Conversely, the market value of the assets shall be increased by the current value of any unfunded actuarial liability separately identified and maintained in accordance with 9904.412–50(a)(2).

(iii) The calculation of the difference between the market value of the assets and the actuarial accrued liability shall be made as of the date of the event (e.g., contract termination, plan amendment, plant closure) that caused the closing of the segment, pension plan termination, or curtailment of benefits. If such a date is not readily determinable, or if its use can result in an inequitable calculation, the contracting parties shall agree on an appropriate date.

(iv) Pension plan improvements adopted within 60 months of the date of the event which increase the actuarial accrued liability shall be recognized on a prorata basis using the number of months the date of adoption preceded the event date. Plan improvements mandated by law or collective bargaining agreement are not subject to this phase-in.

(v) If a segment is closed due to a sale or other transfer of ownership to a successor in interest in the contracts of the segment and all of the pension plan assets and actuarial accrued liabilities pertaining to the closed segment are transferred to the successor segment, then no adjustment amount pursuant to this paragraph (c)(12) is required. If only some of the pension plan assets and actuarial accrued liabilities of the closed segment are transferred, then the adjustment amount required under this paragraph (c)(12) shall be determined based on the pension plan assets and actuarial accrued liabilities remaining with the contractor. In either case, the effect of the transferred assets and liabilities is carried forward and recognized in the accounting for pension cost at the successor contractor.

(vi) The Government's share of the adjustment amount determined for a segment shall be the product of the adjustment amount and a fraction. The adjustment amount shall be reduced for any excise tax imposed upon assets withdrawn from the funding agency of a qualified pension plan. The numerator of such fraction shall be the sum of the pension plan costs allocated to all contracts and subcontracts (including Foreign Military Sales) subject to this Standard during a period of years representative of the Government's participation in the pension plan. The denominator of such fraction shall be the total pension costs assigned to cost accounting periods during those same years. This amount shall represent an adjustment of contract prices or cost allowance as appropriate. The adjustment may be recognized by modifying a single contract, several but not all contracts, or all contracts, or by use of any other suitable technique.

(vii) The full amount of the Government's share of an adjustment is allocable, without limit, as a credit or charge during the cost accounting period in which the event occurred and contract prices/costs will be adjusted accordingly. However, if the contractor continues to perform Government contracts, the contracting parties may negotiate an amortization schedule,

including interest adjustments. Any amortization agreement shall consider the magnitude of the adjustment credit or charge, and the size and nature of the continuing contracts.

12. Subsection 9904.413–60 is revised to read as follows:

**9904.413–60 Illustrations.**

(a) *Assignment of actuarial gains and losses.* Contractor A has a defined-benefit pension plan whose costs are measured under an immediate-gain actuarial cost method. The contractor makes actuarial valuations every other year. In the past, at each valuation date, the contractor has calculated the actuarial gains and losses that have occurred since the previous valuation date and has merged such gains and losses with the unfunded actuarial liabilities that are being amortized. Pursuant to 9904.413–40(a), the contractor must make an actuarial valuation annually. Any actuarial gains or losses measured must be separately amortized over a 15-year period beginning with the period for which the actuarial valuation is made in accordance with 9904.413–50(a) (1) and (2).

(b)(1) *Valuation of the assets of a pension plan.* Contractor B has a qualified defined-benefit pension plan, the assets of which are invested in equity securities, debt securities, and real property. The contractor, whose cost accounting period is the calendar year, has an annual actuarial valuation of the pension plan assets in June of each year; the effective date of the valuation is the beginning of that year. The contractor's method for valuing the assets of the pension plan is as follows: debt securities expected to be held to maturity are valued on an amortized basis running from initial cost at purchase to par value at maturity; land and buildings are valued at cost less depreciation taken to date; all equity securities and debt securities not expected to be held to maturity are valued on the basis of a five-year moving average of market values. In making an actuarial valuation, the contractor must compare the values reached under the asset valuation method used with the market value of all the assets as required by 9904.413–40(b). In this case, the assets are valued as of January 1 of that year. The contractor established the following values as of the valuation date.

| | Asset valuation method | Market |
|---|---|---|
| Cash .................. | $100,000 | 100,000 |
| Equity securities | 6,000,000 | 7,800,000 |
| Debt securities, expected to be held to maturity .................. | 550,000 | 600,000 |
| Other debt securities .............. | 600,000 | 750,000 |
| Land and Buildings, net of depreciation ... | 400,000 | 750,000 |
| Total ....... | 7,650,000 | 10,000,000 |

(2) Section 9904.413–50(b)(2) requires that the actuarial value of the assets of the pension plan fall within a corridor from 80 to 120 percent of market. The corridor for the plan's assets as of January 1 is from $12 million to $8 million. Because the asset value reached by the contractor, $7,650,000, falls outside that corridor, the value reached must be adjusted to equal the nearest boundary of the corridor: $8 million. In subsequent years the contractor must continue to use the same method for valuing assets in accordance with 9904.413–50(b)(3). If the value produced falls inside the corridor, such value shall be used in measuring pension costs.

(c) *Allocation of pension costs to segments.* (1) Contractor C has a defined-benefit pension plan covering employees at five segments. Pension cost is computed by use of an immediate-gain actuarial cost method. One segment (X) is devoted primarily to performing work for the Government. During the current cost accounting period, Segment X had a large and unforeseeable reduction of employees because of a contract termination at the convenience of the Government and because the contractor did not receive an anticipated follow-on contract to one that was completed during the period. The segment does continue to perform work under several other Government contracts. As a consequence of this termination of employment gain, a separate calculation of the pension cost for Segment X would result in materially different allocation of costs to the segment than would a composite calculation and allocation by means of a base. Accordingly, pursuant to 9904.413–50(c)(2), the contractor must calculate a separate pension cost for Segment X. In doing so, the entire termination of employment gain must be assigned to Segment X and amortized over fifteen years. If the actuarial assumptions for Segment X continue to be substantially the same as for the other segments, the termination of employment gain may be separately amortized and allocated only to Segment X; all other Segment X computations may be included as part of the composite calculation. After the termination of employment gain is amortized, the contractor is no longer required to separately calculate the costs for Segment X unless subsequent events require each separate calculation.

(2) Contractor D has a defined-benefit pension plan covering employees at ten segments, all of which have some contracts subject to this Standard. The contractor's calculation of normal cost is based on a percentage of payroll for all employees covered by the plan. One of the segments (Segment Y) is entirely devoted to Government work. The contractor's policy is to place junior employees in this segment. The salary scale assumption for employees of the segment is so different from that of the other segments that the pension cost for Segment Y would be materially different if computed separately. Pursuant to 9904.413–50(c)(2)(iii), the contractor must compute the pension cost for Segment Y as if it were a separate pension plan. Therefore, the contractor must allocate a portion of the market value of pension plan's assets to Segment Y in accordance with 9904.413–50(c)(5). Memorandum records may be used in making the allocation. However, because the necessary records only exist for the last five years, 9904.413–50(c)(5)(ii) permits an initial allocation to be made as of the earliest date such records are available. The initial allocation must be made on the basis of the immediate gain actuarial cost method or methods used to calculate prior years' pension cost for the plan. Once the assets have been allocated, they shall be brought forward to the current period as described in 9904.413–50(c)(7). A portion of the undivided actuarial value of assets shall then be allocated to the segment based on the segment's proportion of the market value of assets in accordance with 9904.413–50(c)(5)(iii). In future cost accounting periods, the contractor shall make separate pension cost calculations for Segment Y based on the appropriate salary scale assumption. Because the factors comprising pension cost for the other nine segments are relatively equal, the contractor may compute pension cost for these nine segments by using composite factors. As required by 9904.413–50(c)(1), the base to be used for allocating such costs shall be representative of the factors on which the pension benefits are based.

(3) Contractor E has a defined-benefit pension plan which covers employees at twelve segments. The contractor uses composite actuarial assumptions to

develop a pension cost for all segments. Three of these segments primarily perform Government work; the work at the other nine segments is primarily commercial. Employee turnover at the segments performing commercial work is relatively stable. However, employment experience at the Government segments has been very volatile; there have been large fluctuations in employment levels and the contractor assumes that this pattern of employment will continue to occur. It is evident that separate termination of employment assumptions for the Government segments and the commercial segments will result in materially different pension costs for the Government segments. Therefore, the cost for these segments must be separately calculated, using the appropriate termination of employment assumptions for these segments in accordance with 9904.413–50(c)(2)(iii).

(4) Contractor F has a defined-benefit pension plan covering employees at 25 segments. Twelve of these segments primarily perform Government work; the remaining segments perform primarily commercial work. The contractor's records show that the termination of employment experience and projections for the twelve segments are so different from that of the average of all of the segments that separate pension cost calculations are required for these segments pursuant to 9904.413–50(c)(2). However, because the termination of employment experience and projections are about the same for all twelve segments, Contractor F may calculate a composite pension cost for the twelve segments and allocate the cost to these segments by use of an appropriate allocation base in accordance with 9904.413–50(c)(1).

(5) After this Standard becomes applicable to Contractor G, it acquires Contractor H and makes it Segment H. Prior to the merger, each contractor had its own defined-benefit pension plan. Under the terms of the merger, Contractor H's pension plan and plan assets were merged with those of Contractor G. The actuarial assumptions, current salary scale, and other plan characteristics are about the same for Segment H and Contractor G's other segments. However, based on the same benefits at the time of the merger, the plan of Contractor H had a disproportionately larger unfunded actuarial liability than did Contractor G's plan. Any combining of the assets and actuarial liabilities of both plans would result in materially different pension cost allocation to Contractor G's segments than if pension cost were computed for Segment H on the basis that it had a separate pension plan. Accordingly, pursuant to 9904.413–50(c)(3), Contractor G must allocate to Segment H a portion of the assets of the combined plan. The amount to be allocated shall be the market value of Segment H's pension plan assets at the date of the merger determined in accordance with 9904.413–50(c)(5), and shall be adjusted for subsequent receipts and expenditures applicable to the segment in accordance with 9904.413–50(c)(7). Pursuant to 9904.413–40(b)(1) and 9904.413–50(c)(5)(iii), Contractor G must use these amounts of assets as the basis for determining the actuarial value of assets used for calculating the annual pension cost applicable to Segment H.

(6) Contractor I has a defined-benefit pension plan covering employees at seven segments. The contractor has been making a composite pension cost calculation for all of the segments. However, the contractor determines that, pursuant to this Standard, separate pension costs must be calculated for one of the segments. In accordance with 9904.413–50(c)(9), the contractor elects to allocate pension plan assets only for the active participants of that segment. The contractor must then create a segment to accumulate the assets and actuarial accrued liabilities for the plan's inactive participants. When active participants of a segment become inactive, the contractor must transfer assets to the segment for inactive participants equal to the actuarial accrued liabilities for the participants that become inactive.

(7) Contractor J has a defined-benefit pension plan covering employees at ten segments. The contractor makes a composite pension cost calculation for all segments. The contractor's records show that the termination of employment experience for one segment, which is performing primarily Government work, has been significantly different from the average termination of employment experience of the other segments. Moreover, the contractor assumes that such different experience will continue. Because of this fact, and because the application of a different termination of employment assumption would result in significantly different costs being charged the Government, the contractor must develop separate pension cost for that segment. In accordance with 9904.413–50(c)(2)(ii), the amount of pension cost must be based on an acceptable termination of employment assumption for that segment; however, as provided in 9904.413–50(c)(10), all other assumptions for that segment may be the same as those for the remaining segments.

(8) Contractor K has a five-year contract to operate a Government-owned facility. The employees of that facility are covered by the contractor's overall qualified defined-benefit pension plan which covers salaried and hourly employees at other locations. At the conclusion of the five-year period, the Government decides not to renew the contract. Although some employees are hired by the successor contractor, because Contractor K no longer operates the facility, it meets the 9904.413–30(a)(20)(i) definition of a segment closing. Contractor K must compute the actuarial accrued liability for the pension plan for that facility using the accrued benefit cost method as of the date the contract expired in accordance with 9904.413–50(c)(12)(i). Because many of Contractor K's employees are terminated from the pension plan, the Internal Revenue Service considers it to be a partial plan termination, and thus requires that the terminated employees become fully vested in their accrued benefits to the extent such benefits are funded. Taking this mandated benefit improvement into consideration in accordance with 9904.413–50(c)(12)(iv), the actuary calculates the actuarial accrued liability to be $12.5 million. The contractor must then determine the market value of the pension plan assets allocable to the facility, in accordance with 9904.413–50(c)(5), as of the date agreed to by the contracting parties pursuant to 9904.413–50(c)(12)(iii), the date the contract expired. In making this determination, the contractor is able to do a full historical reconstruction of the market value of the assets allocated to the segment. In this case, the market value of the segment's assets amounted to $13.8 million. Thus, for this facility the value of pension plan assets exceeded the actuarial accrued liability by $1.3 million. Pursuant to 9904.413–50(c)(12)(vi), this amount indicates the extent to which the Government over-contributed to the pension plan for the segment and, accordingly, is the amount of the adjustment due to the Government.

(9) Contractor L operated a segment over the last five years during which 80% of its work was performed under Government CAS-covered contracts. The Government work was equally divided each year between fixed-price and cost-type contracts. The employees of the facility are covered by a funded nonqualified defined-benefit pension plan accounted for in accordance with 9904.412–50(c)(3). For each of the last five years the highest Federal corporate income tax rate has been 30%. Pension costs of $1 million per year were

computed using a projected benefit cost method. Contractor L funded at the complement of the tax rate ($700,000 per year). The pension plan assets held by the funding agency earned 8% each year. At the end of the five-year period, the funding agency balance; i.e., the market value of invested assets, was $4.4 million. As of that date, the accumulated value of permitted unfunded accruals; i.e., the current value of the $300,000 not funded each year, is $1.9 million. As defined by 9904.413–30(a)(20)(i), a segment closing occurs when Contractor L sells the segment at the end of the fifth year. Thus, for this segment, the market value of the assets of the pension plan determined in accordance with 9904.413–30(a)(10) is $6.3 million, which is, the sum of the funding account balance ($4.4 million) and the accumulated value of permitted unfunded accruals ($1.9 million). Pursuant to 9904.413–50(c)(12)(i), the contractor uses the accrued benefit cost method to calculate an actuarial accrued liability of $5 million as of that date. There is no transfer of plan assets or liabilities to the buyer. The difference between the market value of the assets and the actuarial accrued liability for the segment is $1.3 million ($6.3 million—$5 million). Pursuant to 9904.413–50(c)(12)(vi), the adjustment due the Government for its 80% share of previously-determined pension costs for CAS-covered contracts is $1.04 million (80% times $1.3 million). Because contractor L has no other Government contracts the $1.04 million is a credit due to the Government.

(10) Assume the same facts as in 9904.413–60(c)(9), except that Contractor L continues to perform substantial Government contract work through other segments. After considering the amount of the adjustment and the current level of contracts, the contracting officer and the contractor establish an amortization schedule so that the $1.04 million is recognized as credits against ongoing contracts in five level annual installments, including an interest adjustment based on the interest assumption used to compute pension costs for the continuing contracts. This amortization schedule satisfies the requirements of 9904.413–50(c)(12))(vii).

(11) Assume the same facts as in 9904.413–60(c)(9). As part of the transfer of ownership, Contractor L also transfers all pension liabilities and assets of the segment to the buyer. Pursuant to 9904.413–50(c)(12)(v), the segment closing adjustment amount for the current period is transferred to the buyer and is subsumed in the future pension cost accounting of the buyer. If the transferred liabilities and assets of the segment are merged into the buyer's pension plan which has a different ratio of market value of pension plan assets to actuarial accrued liabilities, then pension costs must be separately computed in accordance with 9904.413–50(c)(3).

(12) Contractor M sells its only government segment. Through a contract novation, the buyer assumes responsibility for performance of the segment's government contracts. Just prior to the sale, the actuarial accrued liability under the actuarial cost method in use is $18 million and the market value of assets allocated to the segment of $22 million. In accordance with the sales agreement, Contractor M is required to transfer $20 million of assets to the new plan. In determining the segment closing adjustment under 9904.413–12(c)(12) the actuarial accrued liability and the market value of assets are reduced by the amounts transferred to the buyer by the sale. The adjustment amount, which is the difference between the remaining assets ($2 million) and the remaining actuarial liability ($0), is $2 million.

(13) Contractor N has three segments that perform primarily government work and has been separately calculating pension costs for each segment. As part of a corporate reorganization, the contractor closes the production facility for Segment A and transfers all of that segment's contracts and employees to Segments B and C, the two remaining government segments. The pension assets from Segment A are allocated to the remaining segments based on the actuarial accrued liability of the transferred employees. Because Segment A has discontinued operations, a segment closing has occurred pursuant to 9904.413–30(a)(20)(ii). However, because all pension assets and liabilities have been transferred to segments that are the successors in interest of the contracts of Segment A, an immediate period adjustment is not required if Contractor N and the cognizant Federal official negotiate an amortization schedule pursuant to 9904.413–50(c)(12)(vii).

(14) Contractor O does not renew its government contract and decides to not seek additional government contracts for the affected segment. The contractor reduces the work force of the segment that had been dedicated to the government contract and converts the segment's operations to purely commercial work. In accordance with 9904.413–30(a)(20)(iii), the segment has closed. Immediately prior to the end of the contract the market value of the segment's assets was $20 million and the actuarial accrued liability determined under the actuarial cost method in use was $22 million. An actuarial accrued liability of $16 million is determined using the accrued benefit cost method as required by 9904.413–50(c)(12)(i). The segment closing adjustment is $4 million ($20 million—$16 million).

(15) Contractor P terminated its underfunded defined-benefit pension plan for hourly employees. The market value of the assets for the pension plan is $100 million. Although the actuarial accrued liability exceeds the $100 million of assets, the termination liability for benefits guaranteed by the Pension Benefit Guarantee Corporation (PBGC) is only $85 million. Therefore, the $15 million of assets in excess of the liability for guaranteed benefits are allocated to plan participants in accordance with PBGC regulations. The PBGC does not impose an assessment for unfunded guaranteed benefits against the contractor. The adjustment amount determined under 9904.413–50(c)(12) is zero.

(16) Assume the same facts as 9904.413–60(c)(17), except that the termination liability for benefits guaranteed by the Pension Benefit Guarantee Corporation (PBGC) is $120 million. The PBGC imposes a $20 million ($120 million—$100 Million) assessment against Contractor P for the unfunded guaranteed benefits. The contractor then determines the Government's share of the pension plan termination adjustment charge of $20 million in accordance with 9904.413–50(c)(12)(vi). In accordance with 9904.413–50(c)(12)(vii), the cognizant Federal official may negotiate an amortization schedule based on the contractor's schedule of payments to the PBGC.

(17) Assume the same facts as in 9904.413–60(c)(16), except that pursuant to 9904.412–50(a)(2) Contractor P has an unassignable portion of unfunded actuarial liability for prior unfunded pension costs which equals $8 million. The $8 million represents the value of assets that would have been available had all assignable costs been funded and, therefore, must be added to the assets used to determine the pension plan termination adjustment in accordance with 9904.413–50(c)(12)(ii). In this case, the adjustment charge is determined to be $12 million ($20 million − $8 million).

(18) Contractor Q terminates its qualified defined-benefit pension plan without establishing a replacement plan. At termination, the market value

of assets are $85 million. All obligations for benefits are irrevocably transferred to an insurance company by the purchase of annuity contracts at a cost of $55 million, which thereby determines the actuarial liability in accordance with 9904.413–50(c)(12)(i). The contractor receives a reversion of $30 million ($85 million – $55 million). The adjustment is equal to the reversion amount, which is the excess of the market value of assets over the actuarial liability. However, ERISA imposes a 50% excise tax of $15 million (50% of $30 million) on the reversion amount. In accordance with 9904.413–50(c)(12)(vi), the $30 million adjustment amount is reduced by the $15 million excise tax. Pursuant to 9904.413–50(c)(12)(vi), a share of the $15 million net adjustment ($30 million—$15 million) shall be allocated, without limitation, as a credit to CAS-covered contracts.

(19) Assume that, in addition to the facts of 9904.413–60(c)(18), Contractor Q has an accumulated value of prepayment credits of $10 million. Contractor Q has $3 million of unfunded actuarial liability separately identified and maintained pursuant to 9904.412–50(a)(2). The assets used to determine the adjustment amount equal $78 million. This amount is determined as the market value of assets ($85 million) minus the accumulated value of prepayment credits ($10 million) plus the portion of unfunded actuarial liability maintained pursuant to 9904.412–50(a)(2) ($3 million). Therefore, the difference between the assets and the actuarial liability is $23 million ($78 million – $55 million). In accordance with 9904.413–50(c)(12)(vi), the $23 million adjustment is reduced by the $15 million excise tax to equal $8 million. The contracting officer determines that the pension cost data of the most recent eight years reasonably reflects the government's participation in the pension plan. The sum of costs allocated to fixed-price and cost-type contracts subject to this Standard over the eight-year period is $21 million. The sum of costs assigned to cost accounting periods during the last eight years equals $42 million. Therefore, the government's share of the net adjustment is 50% ($21 million divided by $42 million) of the $8 million and equals $4 million.

(20) Contractor R maintains a qualified defined-benefit pension plan. Contractor R amends the pension plan to eliminate the earning of any future benefits; however the participants do continue to earn vesting service. Pursuant to 9904.413–30(a)(7), a curtailment of benefits has occurred. An actuarial accrued liability of $78 million is determined under the accrued benefit cost method using the interest assumption used for the last four actuarial valuations. The market value of assets, determined in accordance with 9904.413–50(c)(12)(ii), is $90 million. Contractor R shall determine the Government's share of the adjustment in accordance with 9904.413–50(c)(12)(vi). The contractor then shall allocate that share of the $12 million adjustment ($90 million – $78 million) determined under 9904.413–50(c)(12) to CAS-covered contracts. The full amount of adjustment shall be made without limitation in the current cost accounting period unless arrangements to amortize the adjustment are permitted and negotiated pursuant to 9904.413–50(c)(12)(vii).

(21) Contractor S amends its qualified defined-benefit pension plan to "freeze" all accrued benefits at their current level. Although not required by law, the amendment also provides that all accrued benefits are fully vested. Contractor S must determine the adjustment for the curtailment of benefits. Fifteen months prior to the date of the plan amendment freezing benefits, Contractor S voluntarily amended the plan to increase benefits. This voluntary amendment resulted in an overall increase of over 10%. All actuarial accrued liabilities are computed using the accrued benefit cost method. The actuarial accrued liability for all accrued benefits is $1.8 million. The actuarial accrued liability for vested benefits immediately prior to the current plan amendment is $1.6 million. The actuarial accrued liability determined for vested benefits based on the plan provisions before the voluntary amendment is $1.4 million. The $1.4 million actuarial liability is based on benefit provisions that have been in effect for six years and is fully recognized. However, the $200,000 increase in liability due to the voluntary benefit improvement adopted 15 months ago must be phased-in on a prorata basis over 60 months. Therefore, only 25% (15 months divided by 60 months) of the $200,000 increase, or $50,000, can be included in the curtailment liability. The current amendment voluntarily increasing vesting was just adopted and, therefore, none of the associated increase in actuarial accrued liability can be included. Accordingly, in accordance with 9904.413–50(c)(12)(iv), Contractor S determines the adjustment for the curtailment of benefits using an actuarial accrued liability of $1.45 million ($1.4 million plus $50,000).

(22) Contractor T has maintained separate qualified defined-benefit plans for Segments A and B and has separately computed pension costs for each segment. Both segments perform work under contracts subject to this Standard. On the first day of the current cost accounting period, Contractor T merges the two pension plans so that segments A and B are now covered by a single pension plan. Because the ratio of assets to liabilities for each plan is materially different from that of the merged plan, the contractor continues the separate computation of pension costs for each segment pursuant to 9904.413–50(c)(3). After considering the assignable cost limitations for each segment, Contractor T determines the potentially assignable pension cost is $12,000 for Segment A and $24,000 for Segment B. The maximum tax-deductible amount for the merged plan is $30,000, which is $6,000 less than the sum of the otherwise assignable costs for the segments ($36,000). To determine the portion of the total maximum tax-deductible amount applicable to each segment on a reasonable basis, the contractor prorates the $30,000 by the pension cost determined for each segment after considering the assignable cost limitations for each segment. Therefore, in accordance with 9904.413–50(c)(1)(i), the assignable pension cost is $10,000 for Segment A ($30,000 times $12,000 divided by $36,000) and $20,000 for Segment B ($30,000 times $24,000 divided by $36,000). Contractor T funds the full $30,000 and allocates the assignable pension cost for each segment to final cost objectives.

(23) Assume the same facts as in 9904.413–60(c)(22), except that the tax-deductible maximum is $40,000 and the ERISA minimum funding requirement is $18,000. Since funding of the accrued pension cost is not constrained by tax-deductibility, Contractor T determines the assignable pension cost to be $12,000 for Segment A and $24,000 for Segment B. If the contractor funds $36,000, the full assigned pension cost of each segment can be allocated to final cost objectives. However, because the contractor funds only the ERISA minimum of $18,000, the contractor must apportion the $18,000 contribution to each segment on a basis that reflects the assignable pension cost of each segment in accordance with 9904.413–50(c)(1)(ii). To measure the funding level of each segment, Contractor T uses an ERISA minimum funding requirement separately determined for each segment, as if the segment were a separate plan. On this basis, the allocable pension cost is determined to be $8,000 for Segment A and $10,000 for

Segment B. In accordance with 9904.412–50(a)(2), Contractor T must separately identify, and eliminate from future cost computations, $4,000 ($12,000 – $8,000) for Segment A and $14,000 ($24,000 – $10,000) for Segment B.

(24) Assume the same facts as in 9904.413–60(c)(23), except that Segment B performs only commercial work. As permitted by 9904.413–50(c)(1)(ii), the contractor first applies $12,000 of the contribution amount to Segment A, which is performing work under Government contracts, for purposes of 9904.412–50(d)(i). The remaining $6,000 is applied to Segment B. The full assigned pension cost of $12,000 for Segment A is funded and such amount is allocable to CAS-covered contracts. Pursuant to 9904.412–50(a)(2), the contractor separately identifies, and eliminates from future pension costs, the $18,000 ($24,000 – $6,000) of unfunded assigned cost for Segment B.

(25) Contractor U has a qualified defined-benefit pension plan covering employees at two segments that perform work on contracts subject to this Standard. The ratio of the actuarial value of assets to actuarial accrued liabilities is significantly different between the two segments. Therefore, Contractor U is required to compute pension cost separately for each segment. The actuarial value of assets allocated to Segment A exceeds the actuarial accrued liability by $50,000. Segment B has an unfunded actuarial liability of $20,000. Thus, the pension plan as a whole has an actuarial surplus of $30,000. Pension cost of $5,000 is computed for Segment B and is less than Segment B's assignable cost limitation of $9,000. The tax-deductible maximum is $0 for the plan as whole and, therefore, $0 for each segment. Contractor U will deem all existing amortization bases maintained for Segment A to be fully amortized in accordance with 9904.412–50(c)(2)(ii). For Segment B, the amortization of existing portions of unfunded actuarial liability continues unabated. Furthermore, pursuant to 9904.412–50(c)(2)(iii), the contractor establishes an additional amortization base for Segment B for the assignable cost deficit of $5,000.

13. Subsection 9904.413–63 is revised to read as follows:

**9904.413–63 Effective date.**

(a) This Standard is effective as of March 30, 1995.

(b) This Standard shall be followed by each contractor on or after the start of its next cost accounting period beginning after the receipt of a contract or subcontract to which this Standard is applicable.

(c) Contractors with prior CAS-covered contracts with full coverage shall continue to follow Standard 9904.413 in effect prior to March 30, 1995, until this Standard, effective March 30, 1995, becomes applicable following receipt of a contract or subcontract to which this revised Standard applies.

14. A new subsection 9904.413–64 is added to read as follows:

**9904.413–64 Transition method.**

(a) To be acceptable, any method of transition from compliance with Standard 9904.413 in effect prior to March 30, 1995, to compliance with Standard 9904.413 in effect as of March 30, 1995, must follow the equitable principle that costs, which have been previously provided for, shall not be redundantly provided for under revised methods. Conversely, costs that have not previously been provided for must be provided for under the revised method. This transition subsection is not intended to qualify for purposes of assignment or allocation, pension costs which have previously been disallowed for reasons other than ERISA funding limitations.

(b) The sum of all portions of unfunded actuarial liability identified pursuant to Standard 9904.413, effective March 30, 1995, including such portions of unfunded actuarial liability determined for transition purposes, is subject to the requirements for assignment of 9904.412–40(c).

(c) Furthermore, this Standard, effective March 30, 1995, clarifies, but is not intended to create, rights of the contracting parties, and specifies techniques for determining adjustments pursuant to 9904.413–50(c)(12). These rights and techniques should be used to resolve outstanding issues that will affect pension costs of contracts subject to this Standard.

(d) The method, or methods, employed to achieve an equitable transition shall be consistent with the provisions of this Standard and shall be approved by the contracting officer.

(e) All adjustments shall be prospective only. However, costs/prices of prior and existing contracts not subject to price adjustment may be considered in determining the appropriate transition method or adjustment amount for the computation of costs/prices of contracts subject to this Standard.

[FR Doc. 95–7555 Filed 3–29–95; 8:45 am]
BILLING CODE 3110–01–P