DEFENSE CONTRACT MANAGEMENT AGENCY
CORPORATE ADMINISTRATIVE CONTRACTING OFFICER
C/O L-3 COMMUNICATIONS CORPORATION
600 THIRD AVENUE 15th Floor
NEW YORK, NY 10016-2065

January 29, 2003

Unisys Corporation
ATTN: Ms. Donna Q. Obrecht
Manager, Corporate Government Accounting
Unisys Way
Blue Bell, PA 19426

Subject: CAS 413 Noncompliance

Dear Ms. Obrecht:

Forwarded hereby is a copy of DCAA Supplemental Audit Report No. 6701-97D19200123 S1, dated January 23, 2003. The supplemental audit addresses Unisys' July 2001 computations regarding the CAS 413 segment closing adjustment relating to the 1995 sale of four segments to Loral Corporation.

As you can see, the supplemental audit shows that that an adjustment is due the Government from Unisys in the amount indicated, plus interest under the CAS clauses of the affected contracts.

I suggest that the parties and their representatives meet to discuss the audit findings. Many of the Government representatives involved in this matter are scheduled to be at a conference in Northern Virginia during the week of March 10. We could meet with you during that week at Unisys' Northern Virginia offices.

At present, the Initial Finding of Noncompliance with CAS 413 which I previously issued is in effect. If we are unable to come to a satisfactory resolution of this matter, the next step would be a Final Determination of Noncompliance. Hopefully, discussions can lead to a resolution.

Please contact me at (212) 338-0370 or by e-mail (Denise.Chezek@dcma.mil) to arrange for a day that the parties can meet.

Sincerely,

Denise D. Chezek

Denise D. Chezek
Corporate Administrative
Contracting Officer

# DEFENSE CONTRACT AUDIT AGENCY
# AUDIT REPORT NO. 6181-97D19200123-S1

January 23, 2003

**PREPARED FOR:** Commander
Defense Contract Management Agency
DCMAE-GND ATTN: Ms. Denise Chezek
Corporate Administrative Contracting Officer
c/o L3 Corporation
600 3rd Avenue 15th Floor
New York, NY 10016
E-mail Address: dchezek@dcmde.dcma.mil

**PREPARED BY:** Defense Contract Audit Agency
Mid-Atlantic Region
Pennsylvania Branch Office
700 American Avenue, Suite 100
King of Prussia, PA 19406-4031
Telephone No. (610) 878-2860
FAX No. (610) 878-2870
E-mail Address: dcaa-fao6701@dcaa.mil

**SUBJECT:** Supplemental Audit Report on Unisys' Noncompliance with CAS 413.50(c)(12): Failure to Make the Required 1995 Pension Cost Adjustments Due to the Sale and Closure of Four CAS Segments

**REFERENCE:** DCAA: Audit Report No. 6701-97D19200123 S1

**CONTRACTOR:** Unisys Corporation
Township Line and Union Meeting Roads
Post Office Box 500
Blue Bell, PA 19424-0001

**REPORT RELEASE RESTRICTIONS:** See Page 18

**CONTENTS:**


| | Page |
|---|---|
| Subject of Audit | 1 |
| Results of Audit | 3 |
| DCAA Personnel and Report Authorization | 16 |
| Audit Report Distribution | 17 |
| Audit Report Restrictions | 18 |
| Appendix 1 – Unisys Data and Computations | 19 |
| Appendix 2 – Estimated Net Monetary Impact | 30 |
| Appendix 3 – Computation of Interest | 32 |
| Appendix 4 – Supplemental Computation of Segment Closing Adjustments | 33 |
| Appendix 5 – Successor Contractor FPI ROM Data | 34 |

## SUBJECT OF AUDIT

As requested by the Corporate Administrative Contracting Officer and former Loral Defense Corporate Executive, we are supplementing our original audit report to evaluate the contractor's July 19, 2001 computation of the CAS 413.50(c)(12) pension adjustment for each closed segment. By performing government contracts covered by 48 C.F.R. Chapter 99, the Unisys Corporation asserts that its cost accounting practices comply with the CAS Board's rules, regulations, and standards. Our continuous examination of the contractor's cost accounting practices during performance of contracts includes evaluating whether the contractor has complied with the CAS Board's rules, regulations, and standards, and any applicable FAR Part 31 requirements. The contractor is responsible for compliance with those requirements. Our responsibility is to express an opinion on compliance based on our examination.

## EXECUTIVE SUMMARY

Our original audit report dated April 12, 1998 identified a Unisys Corporation noncompliance with the *original* CAS 413.50(c)(12). Specifically, the contractor did not make the required adjustments of 1995 pension costs related to Unisys' 1995 sale of four CAS segments. This supplemental audit report revises our previously recommended pension closing adjustment and the related net impact due to the Government in order to reflect a recovery based on the flexibly priced contracts performed in the cost accounting period of the segment closings.

The *original* CAS 413.50(c)(12) requires the computation of four separate pension adjustments at Unisys, one for each of Unisys' sold segments. The computation of a separate CAS 413.50(c)(12) closing adjustment for each of the closed CAS segments ensures that the 1995 pension adjustment\credit will be allocated to, and the resulting recovery is affected on, the appropriate flexibly priced government contracts. The audit recommended 1995 pension cost adjustments total to $50,958,308 for the four closed segments. If the four individual pension adjustments\credits are not treated as cost reductions on the 1995 books and records at the corresponding closed segments, we have estimated that contractor would need to provide a check or other equivalent monetary payment in the amount of $22,063,132 in order to affect a corresponding Government recovery. Applicable interest, as required by the CAS clause, for the $22,063,132 of increased costs totals an additional $12,792,372.

## SCOPE OF AUDIT

We limited our audit to an examination of the contractor's cost accounting practices related to the required adjustments to Unisys' 1995 pension costs resulting from the sale of four CAS-covered segments to Loral. Except for the qualifications discussed below, we conducted our examination in accordance with generally accepted government auditing standards. Those standards require that we plan and perform the examination to obtain reasonable assurance about

whether the contractor has complied with the requirements referred to above. An examination includes:

- evaluating the contractor's internal controls, assessing control risk, and determining the extent of audit testing needed based on the control risk assessment;
- examining, on a test basis, evidence supporting the cost accounting practices; and
- assessing the actual cost accounting practices and compliance of those practices with the disclosed cost accounting practices and applicable requirements.

We evaluated the contractor's cost accounting practices using the applicable requirements contained in the:

- Federal Acquisition Regulation (FAR); and
- CAS Board's rules, regulations and standards.

Our CAS 413.50(c)(12) recommendations are based on the allocation of the segment closing pension adjustments to flexibly priced contracts. Actions are currently pending in the United States Court of Federal Claims for the Teledyne case that may ultimately affect the determination of the net recovery due to the Government. Furthermore, certain contract data is also outstanding with regard to the cost share percentages on contracts at the Great Neck segment. As described below, the results of audit are qualified accordingly.

Unisys Corporation's accounting system is considered generally reliable for the accumulation and reporting of management expenses that are allocated to government contracts. The contractor's corporate incurred cost submissions are also considered generally adequate. A board of directors and an audit committee actively oversee the accounting and financial reporting policies and procedures. The contractor also has an internal compliance group that performs independent checks of compliance with laws and regulations. Based on our review of the contractor's accounting system and control environment and procedures, we normally assess control risk at less than the maximum. However, due to the unusual and nonrecurring nature of the transaction being reviewed (the adjustment of pension costs following the sale and closure of four CAS-covered segments), we assess control risk in this area as high. The scope of our examination reflects this assessment of control risk and includes audit tests designed to provide a reasonable basis for our opinion.

Our examination does not provide a legal determination on the Unisys Corporation's compliance with the specified requirements.

**QUALIFICATIONS:**

1. Outstanding Appeals for the Teledyne Case: On August 9, 2001, the United States Court of Federal Claims (CoFC) issued a number of rulings in the Teledyne case (references 96-782C, 97-792C, and 97-659C consolidated). Our audit recommended pension closing adjustment and the related net monetary impact due to the Government are based on the computation of the pension cost adjustment as a 1995 event that is allocable to Unisys' flexibly priced contracts performed during the cost accounting period of the segment closing. The results of audit are qualified to the extent that subsequent actions and/or appeals in the Teledyne CoFC decision could affect the final recovery due to the Government as a result of the required CAS 413.50(c)(12) adjustment.

2. Incomplete Data on Fixed Price Incentive Contracts: On June 4, 2002, Unisys provided DCAA a copy of a 1997 Lockheed Martin (LM) Rough Order of Magnitude (ROM) that judgmentally estimated a 30.2 percent FPI refundable flow-through percentage for a 1995 property tax refund at the Great Neck segment. Neither Unisys nor LM has provided adequate source documentation to verify the 30.2 percent FPI refundable flow-through percentage. Accordingly, the 30.2 percent LM ROM for FPI refundable flow-through percentage has not been adequately supported and can not be accepted for audit purposes. As an alternative, we have calculated an estimated Great Neck FPI refundable flow-through percentage of 58.0% based on the following LM assertions:

- The FPI Nexrad contract was a 50/50 cost share contract during 1995, and
- The FPI Nexrad contract was 60 percent of Great Neck's FPI activity in 1995

We have estimated that a 70/30 government-contractor share ratio applies to the remaining 40 percent of the Great Neck FPI contracts in 1995. The audit results are qualified because Unisys may submit information to support its FPI position.

## RESULTS OF AUDIT

In our opinion, the Unisys Corporation is in noncompliance with CAS 413.50(c)(12) because the contractor did not adjust their 1995 contract costs for the sale and closure of the Great Neck, Huntsville, Communication Systems, and Electronic Systems segments. This report is limited to the cited instances of noncompliance. Accordingly, we express no opinion on whether other practices are proper, approved, or agreed to for pricing proposals, accumulating costs, or reporting contractor performance data. The audit recommendations concerning the required pension cost adjustments and the net monetary impact due to the Government are qualified as noted above.

## STATEMENT OF CONDITION AND RECOMMENDATION

Our examination disclosed that the contractor's failure to comply with CAS 413.50(c)(12) has resulted in increased costs being allocated to government flexibly priced contracts. The contractor has proposed that the allocable cost adjustment associated with this noncompliance on flexibly priced government contracts is less than $290,982. In our opinion, this amount is understated and the required CAS 413.50(c)(12) adjustments should have been booked as actual cost adjustments in the 1995 job cost ledgers of the closed segments. In the aggregate, we have recommended four CAS 413.50(c)(12) pension adjustments to the 1995 cost accounts totaling $50,958,308 at the closed segments. Of the recommended pension cost adjustments, $27,435,957 is allocable to flexibly priced government contracts. Our recommended 1995 cost adjustments of $50,958,308 can also be restated, if necessary, to an estimated net monetary impact of $22,063,132 due to the Government (i.e. an equivalent lump sum monetary impact or cash payment to the Government based on 1995 dollars); see Appendix 2 for details on this restatement.

A summary of the contractor's proposed, the audit recommended, and the questioned pension cost adjustments allocable to government flexibly priced contracts was computed as follows:

**Summary of Proposed, Recommended and Questioned Pension Cost Adjustments Allocable to Flexibly Priced Contracts**

| Description | Great Neck | Huntsville | Electronic Systems | Communication Systems | Total | Ref. |
|---|---|---|---|---|---|---|
| **Unisys Proposed Remaining Cost Adjustment Allocable to Government Flexibly Priced Contracts** | $4,675,942 | ($63,221) | ($4,024,665) | ($297,074) | $290,982 | Schedule A |
| **Audit Recommended CAS 413 Cost Adjustment Allocable to Government Flexibly Priced Contracts** | 23,109,991 | 23,645 | 3,367,378 | 934,942 | 27,435,956 | Schedule B |
| **Questioned Cost Adjustment Allocable to Government Flexibly Priced Contracts** | $18,434,049 | $86,866 | $7,392,043 | $1,232,016 | $27,144,974 | |

( ) – Represents the allocable amount of additional costs on flexibly priced contracts that the contractor asserts is due from the Government because of a supposed pension deficit.

Details concerning Unisys' computation of the maximum $290,982 cost impact on flexibly priced contracts and our recommended $27,435,956 cost impact due on flexibly priced contracts are included in Schedule A and Schedule B, respectively.

1. Condition.

On May 4, 1995, Unisys sold four separate CAS segments to Loral. For CAS 413 purposes, when a company sells a CAS segment, it is deemed a segment closing. The *original* CAS 413.50(c)(12) requires Unisys to make appropriate adjustments to each segment's pension costs when those CAS segments were closed. The required adjustments are to be computed as:

> "...the calculation of the difference between the market value of the assets and the actuarial liability shall be made as of the date of the event (e.g. contract termination) that caused the closing of the segment." (CAS 413.50(c)(12))

When Unisys sold the four CAS segments to Loral Corporation on May 4, 1995, the market value of the assets for the four segments assets significantly exceeded the related actuarial accrued liability (i.e. collectively the closed segments had a significant pension asset surplus). Unisys did not make any contemporaneous adjustments of their 1995 pension costs in order to satisfy the requirements of the *original* CAS 413.50(c)(12).

The contractor's failure to make the contemporaneous adjustments of 1995 pension costs resulted in a significant overstatement of the 1995 contract costs allocable to flexibly priced contracts. The calculation of the "difference between the market value of the assets and the actuarial liability" on a pre-transfer and post-transfer (or retained) basis is as follows:

Computation of the Pre-Transfer and Post-Transfer Pension Asset Surpluses as of 1/1/95 *

| Closed Segment | Market Value Of Assets (1) | Actuarial Liability (2) | Pre-Transfer Surplus Assets (3) = (1-2) | Surplus Assets Transferred to The Buyer\Loral (4) | Retained\Surplus Assets CAS 413.50(c)(12) Difference\Adjustmt (5) = (3-4) |
|---|---|---|---|---|---|
| Great Neck | $503,171,488 | $451,392,746 | $51,778,742 | 18,168,839 | 33,609,903 |
| Huntsville | 8,457,335 | 8,094,215 | 363,120 | 170,923 | 192,197 |
| Electronics Sys | 311,366,550 | 290,622,544 | 20,744,006 | 6,737,981 | 14,006,025 |
| Communications | 78,428,602 | 75,061,232 | 3,367,370 | 2,299,312 | 1,068,058 |
| Total | $901,423,975 | $825,170,737 | $76,253,238 | $27,377,055 | $48,876,183 |

* The contractor's proposed adjustments and supporting data used actuarial and asset values as of the beginning of the 1995 cost accounting period. An additional $2,082,125 adjustment to restate the value of the retained surplus assets to the May 4, 1995 date of the closing event is included in our recommended CAS 413.50(c)(12) segment closing computations; this brings the total value of the retained assets to $50,958,308 ($48,876,183 plus $2,082,125) as shown on Schedule B.

The proper accounting for the $27,377,055 asset transfer to the successor-in-interest (Loral) shown in column 4 above is the primary difference between the contractor's computation of the required pension cost adjustment and our audit recommended pension cost adjustment. As described in Schedule A, the contractor's method for computing the required CAS 413.50(c)(12) segment closing adjustment and the related adjustment allocable to government flexibly priced

contracts is not supported by the CAS requirements. The contractor's method represents an "out-of-sequence" application of the *original* CAS 413.50(c)(12) requirements and does not result in the logical recovery of previously overstated pension costs (see Schedule A for additional details).

The $48,876,183 of surplus assets retained by Unisys represent Government and commercial customer over-contributions of pension costs in previous cost accounting periods and, as such, an appropriate allocable share of the retained assets should be provided to the Government as a 1995 cost reduction on their flexibly priced contracts in accordance with the original CAS 413.50(c)(12).

2. Audit Position: The $76,253,238 of total surplus pension assets for the closed segments represents the amount which the Government and other customers would have realized as reduced pension costs in future cost accounting periods under the original CAS 413.50(c)(12). However, since Unisys transferred $27,377,055 of the $76,253,238 surplus pension assets to the successor-in-interest (Loral), the Government and other customers of the sold segments will continue to benefit from these transferred surplus assets. Accordingly, the Government and other customers will not realize any future benefit of pension cost reductions related to the $48,876,183 pension surplus retained by Unisys. In accordance with CAS 413.50(c)(12), Unisys' 1995 pension costs should be adjusted downwards by the $48,876,183 of retained surplus pension assets to eliminate this discrepancy.

As a consequence of the $27,377,055 Unisys transfer of surplus pension assets to the successor contractor, we have computed the required cost adjustment under the *original* CAS 413.50(c)(12) based on the retained pension assets and the retained actuarial liabilities by Unisys. Accordingly, the resulting CAS 413.50(c)(12) calculation of the "difference" simply represents the retained surplus assets totaling $48,876,183 as of January 1, 1995. This post-transfer segment closing adjustment must be further increased to $50,958,308 to reflect additional investment income from January 1, 1995 to the date or the segment divestitures\closures on May 4, 1995. The entire $50,958,308 adjustment should have been credited in 1995 to the appropriate cost accounts on the books and records at the respective closed segments. See Schedule B for the detailed computations supporting the audit recommended $50,958,308 pension adjustment amount.

In summary, the sale of four CAS segments resulted in the closing of segments in accordance with the CAS 413. The contractor's failure to make the required 1995 adjustments totaling $50,958,308 represents a CAS 413.50(c)(12) noncompliance because the contractor's pension costs have not been properly adjusted in accordance with CAS 413.50(c)(12). The portion of the CAS 413.50(c)(12) cost adjustment that is allocable to flexibly priced government contracts is $27,435,957 as computed in Schedule B.

3. Contractor Position: The contractor believes that the $27,377,055 transfer of the surplus assets to Loral should reduce or offset, on a dollar for dollar basis, the flexibly priced contract

recoverable portion of a "pre-transfer" calculated CAS 413.50(c)(12) adjustment as of January 1, 1995. Details on the Unisys computed pre-transfer $76,253,238 pension adjustment, the related computation of their proposed adjustment allocable to flexibly priced government contracts, and the proposed $27,377,055 dollar for dollar offset to the flexibly priced contract adjustment are shown on Schedule A. Schedule A also summarizes the major areas where we disagree with the contractor's "out-of-sequence" application of CAS 413.50(c)(12).

4. Recommendation: The contractor should credit the closed segments' 1995 "cost accounts" for amounts totaling $50,958,308 (i.e. $48,876,183 of retained surplus pension assets as of January 1, 1995 plus $2,082,126 of interest/investment income for the period of January 1, 1995 to May 4, 1995). In the alternative, the contractor could provide a check or otherwise provide an estimated cash payment of $22,063,132 plus related interest from May 4, 1995 up to the date that contractor makes the required payments to correct the CAS noncompliance. Related interest, computed in accordance with the CAS Clause [FAR 52.230-2(a)(5)], due from Unisys for May 4, 1995 through December 31, 2002 totals $12,792,372.

5. Contractor's Reaction: Unisys does not agree with our conclusion that they are in noncompliance with CAS 413.50(c)(12). Specifically, the areas of disagreement, as described by Unisys and their outside counsel Crowell & Moring LLP on August 3, 2000, include:

- The divested segments do not represent segment closings within the meaning of CAS 413.50(c)(12);
- The CAS 413.50(c)(12) adjustment or adjustments need to be made in the cost accounting periods prior to 1995 (i.e. it is the "previously-determined pensions costs" that must be actually adjusted) and most of these cost accounting periods already have final negotiated indirect rates that can not now be legally renegotiated;
- The subject pension closing adjustment, if applicable, is overstated due to the use of on going actuarial assumptions (Unisys has indicated they would challenge previous determinations that ongoing actuarial assumptions are to be used in determining the original CAS 413.50(c)(12) adjustments);
- The subject pension closing adjustment, if applicable, should be offset against post-retirement health benefit obligations retained by Unisys;
- The subject pension closing adjustment, if applicable, should be offset against monies supposedly due to Unisys related to the pay-as-you-go SERP pension plan;

The Corporate Administrative Contracting Officer will solicit Unisys' reactions regarding the audit recommendations related to the contractor's "out-of-sequence" application of CAS 413.50(c)(12).

The contractor also believes that the net adjustments allocable to flexibly priced contracts as shown on Schedule A and Schedule B should be further reduced if a recovery is made via check

or other monetary payment. Specifically, at the Great Neck segment, Unisys has provided a 1997 rough order of magnitude prepared by a successor contractor suggesting that the 1995 flow-through percentage on Fixed Price Incentive (FPI) contracts is approximately 30 percent. The contractor requested that the cost share provisions of the Great Neck FPI contracts be considered by the government in the negotiation and resolution process.

6. Auditor Rejoinder: None of the issues raised by the contractor relieve Unisys from the requirement to comply CAS 413.50(c)(12). Nor do any of these issues impact or otherwise reduce the audit recommended 1995 segment closing pension cost adjustment or the recommended cost adjustment allocable to government flexibly priced contracts.

However, we agree with the contractor's position that the Great Neck FPI cost share ratios should be considered during any negotiations or resolution of this noncompliance via check or other monetary lump sum settlement. But to date, neither Unisys nor the successor contractor have provided the data necessary to demonstrate the appropriate impact of the cost share requirements of the Great Neck FPI contracts. The results of audit are qualified until the appropriate contract specific data have been provided. Appendix 2 computes an impact based on the cost share requirements of FPI contracts to estimate a net monetary impact of this noncompliance to the Government.

The potential offset for the Unisys pay-as-you-go SERP pension plan should be further coordinated with the DCMA CIPR Center since this plan was not measured or assigned on an accrual basis. In our opinion, any offset of a CAS 413.50(c)(12) adjustment against a computed potential liability for a pay-as-you-go SERP is not required by CAS.

## Contractor's Proposed Computation of the Segment Closing Adjustment Allocable to Flexibly Priced Government Contracts Under the Original CAS 413.50(c)(12).

The contractor does not believe a pension segment closing adjustment is required. However, if a pension segment closing adjustment were necessary, Unisys believes that the $27,377,055 transfer of surplus assets to the successor-in-interest (Loral) substantially satisfied Unisys' obligations under CAS 413.50(c)(12). The contractor's July 19, 2001 computations (see Appendix 1) proposed a $290,982 maximum pension "gross adjustment" for flexibly priced contracts as follows:

**Proposed Pension Adjustment Allocable to Flexibly Priced Government Contracts Per Appendix 1 - Data as of 1/1/95**

| Description | Great Neck | Huntsville | Electronic Systems | Communication Systems | Total | References |
|---|---|---|---|---|---|---|
| **Market Value of Assets** | $503,171,488 | $8,457,335 | $311,366,550 | $78,428,602 | $901,423,975 | |
| **LESS; Actuarial Accrued Liability** | (451,392,746) | (8,094,215) | (290,622,544) | (75,061,232) | (825,170,737) | |
| **Proposed Total Asset Surplus or the Gross CAS 413 Adjustment** | 51,778,742 | 363,120 | 20,744,006 | 3,367,370 | 76,253,238 | Note 1. |
| **Proposed Govt Recovery Percentage (1991 - 1994 *flexibly priced contract mix percentage*) for the CAS 413 Adjustment** | 44.12% | 29.66% | 13.08% | 59.46% | | Note 2. |
| **Unisys Proposed Flexibly Priced Govt Share of the Surplus** | 22,844,781 | 107,701 | 2,713,316 | 2,002,238 | 27,668,037 | Note 3. |
| **LESS: Proposed Offset for the Surplus Assets Transferred to Loral** | 18,168,839 | 170,923 | 6,737,981 | 2,299,312 | 27,377,055 | Note 4. |
| **Unisys' Proposed Remaining Adjustment Allocable to Government Flexibly Priced Contracts** | $4,675,942 | [$63,222] | [$4,024,665] | [$297,074] | $290,982 | |

[ ] – Represents an allocable amount of additional costs that the contractor asserts is due on flexibly priced government contracts as a result of a supposed pension asset deficit.

1. Total Asset Surplus: The amounts shown agree with the pre-transfer surplus assets as shown in the Condition Paragraph within the body of this report. The proposed total asset surplus was determined as of January 1, 1995. The amounts shown are comprised of assets and liabilities from three separate pension plans (Unisys Pension Plan, Great Neck Bargaining Plan, and Unisys Noncontributory Pension Plan). The shown actuarial liabilities were determined using ongoing actuarial assumptions. The market value of the assets for each closed segment was determined based on an allocation to each segment from the "Government" segmented assets

in each plan; the allocation of "Government" assets in each plan was based on a pro rata share of the corresponding actuarial liabilities for each closed segment.

The contractor believes these total or gross amounts would be the segment closing pension adjustments referenced in the *original CAS 413.50(c)(12)* if there had been no transfers of pension assets to the successor-in-interest.

In general, we take no exception to the Unisys computed pre-transfer asset surplus for each closed segment. However, the proposed asset surpluses should be increased from their January 1, 1995 values to reflect additional interest/investment income up to and including the date of the segment closings on May 4, 1995 (See Schedule B, Note 2).

2. Flexibly Priced Contract Recovery Percentage: The contractor has proposed, with reservations, a representative period of 1991 – 1994. Although the contractor believes the inclusion of years prior to 1991 would potentially be more representative, the 1991 – 1994 data was used by Unisys because it was readily available.

Audit Exception #1 – Contractor Proposed Representative Period: The use of contract mix data from a period "representative of the Government's participation in the pension plan" is a requirement of the *1995* CAS 413.50(c)(12)(vi) in order to determine the "Government's share" of the adjustment. However, the contractor has indicated that the Unisys May 4, 1995 pension closing adjustments **must** be accounted for under the *original* CAS 413 since the *original* CAS 413 was the controlling requirement applicable to Unisys' contracts as of May 4, 1995 segment closing date.

The contractor should not be able to inconsistently pick certain portions of the *original* CAS 413 when advantageous and, then later, pick other portions of the *1995* CAS 413 at any given moment. In this instant, Unisys uses a representative period per the *1995* CAS 413.50(c)(12)(vi) to determine the flexibly priced allocable "share" of the pension adjustment but then does not compute that pension adjustment using only the *retained* assets and liabilities as required by the *1995* CAS 413.50(c)(12)(v). The contractor's inconsistent application of the *1995* CAS 413.50(c)(12) requirements is inequitable and erroneous.

We agree with the contractor that the May 4, 1995 segment closings should be accounted for under the *original* version of CAS 413. Accordingly, the required pension adjustment should be treated as a reduction of the 1995 "cost" accounts at the closed segments. If the contractor does not book the required pension segment closing adjustments to the 1995 books and records (i.e. the "cost accounts") at each closed segment, then alternatively the segment closing adjustment can be restated as a monetary lump sum amount using the 1995 flexibly priced contract mix and cost share requirements at each of the closed segments in order to be consistent with the requirements of the *original* CAS 413.50(c)(12); see Appendix 2 for the restatement of the required pension adjustment from a cost adjustment into a lump sum amount.

3. Unisys Proposed Government Flexibly Priced Share of the Surplus Assets: The contractor's proposed flexibly priced Government share of the asset surplus is the product of the total asset surplus multiplied by the contractor's proposed flexibly priced Government contract mix for 1991 – 1994. In the absence of any surplus asset transfers to the successor-in-interest, the contractor believes that these amounts would be the maximum pension cost adjustments allocable to flexibly priced government contracts under the requirements of the *original* CAS 413.50(c)(12).

4. Proposed Offset for the Surplus Assets Transferred to Loral: As part of the negotiated sales agreement for the divestiture of Great Neck, Huntsville, Electronic Systems, and Communication Systems segments to Loral, Unisys agreed to transfer $27,377,055 of surplus pension assets (i.e. pension assets were transferred to Loral above and beyond the actuarial liabilities that were transferred to Loral). The contractor believes that the transfer of surplus pension assets to Loral should be a treated as a dollar for dollar reduction of the Government's flexibly priced share of the asset surplus. The contractor has indicated that the *1995* CAS 413.50(c)(12)(v) recognizes that when "all of the pension plan assets and actuarial liabilities pertaining to a closed segment are transferred to the successor segment, then no adjustment amount pursuant to this paragraph (c)(12) is required." By extrapolation, the contractor believes the partial transfer of surplus assets should be treated as a direct dollar for dollar reduction to the Government's flexibly priced or recoverable share of the surplus assets.

Auditor Exception #2 – The Contractor's Out-of-Sequence Application of CAS 413.50(c)(12): The contractor's position has no merit and no basis in CAS rules or standards. The referenced CAS 413.50(c)(12)(v) is part of the *1995* CAS 413 and, as noted above, the contractor has argued that the May 4, 1995 Unisys segment closing pension adjustments must be accounted for under the *original* CAS 413, not the *1995* CAS 413. If the *1995* CAS 413 were used to account for the 1995 segment closings, then Unisys would clearly be required to compute the CAS 413.50(c)(12) "difference" on a retained asset and retained actuarial liability basis (and the contractor's out-of-sequence application of the credit for surplus transferred assets would not be a disputed issue).

The surplus transferred to the successor-in-interest (Loral) will benefit all continuing work sold to Loral. This includes commercial work and both government fixed and flexibly-priced contracts. Accordingly, the contractor's proposed CAS 413.50(c)(12) adjustment is "out-of-sequence" in that it uses surplus pension assets transferred to the successor-in-interest, which relate to all types of contracts, to reduce a pension cost adjustment computed by Unisys that only applies to flexibly priced contracts. This proposed dollar for dollar offset for the transferred assets is inconsistent with underlying basis for how the contractor's adjustment allocable to flexibly priced contracts was computed.

Finally, the contractor's out-of-sequence method, without explanation, converts instances where Unisys retained surplus pension assets for a particular segment into a pension asset deficit

adjustment at three of the four closed segments (Huntsville, Electronic Systems, and Communications Systems segments). It is not equitable that the Government would be required to make additional pension cost contributions to Unisys when Unisys continues to maintain and benefit from retained surplus pension assets for each of those three closed segments.

Therefore, the total pension asset surplus amount should first be adjusted for the assets transferred to Loral (i.e. the pension adjustment should be computed on a retained asset and retained actuarial liability basis), then the government's flexibly priced share of the surplus pension assets retained by Unisys should be calculated as shown in Schedule B. The contractor's "out-of-sequence" application of the CAS 413.50(c)(12) requirements is inappropriate.

**Recommended Computation of the Segment Pension Closing Adjustment Allocable to Flexibly Priced Government Contracts Under the Original CAS 413.50(c)(12).**

The contractor's proposed treatment of the $27,377,055 transfer of surplus assets to the successor-in-interest (Loral) leads to an erroneous computation of the pension adjustment due to the Government. Under the *original* CAS 413.50(c)(12), the pension closing adjustment allocable to the Government on flexibly priced contracts can be most directly calculated by computing the "difference" between the market value of *retained* assets and the *retained* actuarial liability as follows:

Recommended Computation of the CAS 413.50(c)(12) Pension Adjustment Allocable to Flexibly Priced Contracts

| Description | Great Neck | Huntsville | Electronic Systems | Communications Systems | Total | Reference |
|---|---|---|---|---|---|---|
| 1/ 95 Market Value of Retained Assets | $402,123,670 | $5,676,333 | $219,453,972 | $41,017,557 | $668,271,532 | |
| LESS: 1/95 Actuarial Accrued Retained Liabilities | 368,513,767 | 5,484,136 | 205,447,947 | 39,949,500 | 619,395,350 | |
| 1/95 Retained CAS 413 Adjustment | 33,609,903 | 192,197 | 14,006,025 | 1,068,057 | 48,876,182 | Note 1. |
| PLUS: Additional Investment/Interest Income for 1/95 – 5/95 | 1,431,782 | 8,188 | 596,657 | 45,499 | 2,082,126 | Note 2. |
| 5/95 Retained CAS 413 Adjustment | 35,041,685 | 200,385 | 14,602,682 | 1,113,556 | 50,958,308 | Note 3. |
| 1995 Flexibly Priced Contract Percentages | 65.95% | 11.80% | 23.06% | 83.96% | | Note 4. |
| Recommended Adjustment Allocable to Government Flexibly Priced Contracts | $23,109,991 | $23,645 | $3,367,378 | $934,942 | $27,435,956 | Note 5. |

1. Retained Asset Surplus as of January 1, 1995: The contractor's computations erroneously treated the transfer of surplus assets to the successor-in-interest (Loral) as a dollar for dollar benefit to the Government. The transfer of pension assets merely reduces the amount of surplus and retained assets that will be a future benefit to Unisys' continuing operations. Accordingly, the transferred assets should reduce the "difference between the market value of the assets and the actuarial liability" in determining the pension adjustment required from Unisys at each of the closed segments. As such, we have recommended that the 1995 pension segment closing adjustments be the differences between the retained assets and the retained liabilities at each closed segment.

Our recommendation was coordinated with the DCMA CIPR Center and computes the pension segment closing adjustment on the basis of the retained pension assets and retained liabilities.

2. Additional Investment/Interest Income Adjustment for January 1995 to May 1995: The contractor's proposed pension asset and actuarial liability amounts were based on January 1, 1995 data. The *original* CAS 413.50(c)(12) requires the pension adjustment for the segment closing to be computed as of the date of the event (i.e. the May 4, 1995 date of the sale of the segments to the successor-in-interest). The interest income computed on the January 1, 1995 surplus was 4.26% or the rate used by Unisys and Loral to determine the pension asset transfers under the sales agreement.

3. The Difference Between the Retained Market Value of the Pension Assets and the Retained Actuarial Liability for the Closed Segments: In accordance with the *original* CAS 413.50(c)(12) the calculated "difference between the market value of the assets and the actuarial liability for the segments represents an adjustment of previously-determined pension costs." Since these "differences" represent a 1995 adjustment of costs, Unisys should have contemporaneously credited the "differences" to each segment's cost accounts in the year of the segment closings.

4. 1995 Flexibly Priced Contracts: If it is not possible to get the required 1995 adjustment of the "cost accounts" in the year of closing at each segment, the amount of the pension adjustment allocable to flexibly priced government contracts can be computed as the product of the retained surplus assets multiplied by the appropriate 1995 contract mix of Government flexibly priced contracts. We have determined the 1995 Government flexibly priced contract mix percentages based on information provided by the successor-in-interest contractor (Loral).

5. Recommended Adjustment Allocable to Government Flexibly Priced Contracts: As described above in Note 3, in 1995 Unisys should have made the requisite credits to the closed segments' cost accounts in amounts totaling $50,958,308 for the retained surplus pension assets. Had Unisys complied with CAS 413.50(c)(12) and adjusted the 1995 pension costs downward by $50,958,308, the costs allocated to flexibly priced government contracts would have been reduced by 27,435,957.

In the alternative, the contractor could provide a check or otherwise provide a cash payment for an estimated amount of $22,063,132 (See Appendix 2). Also , the interest related to this CAS noncompliance for the time period subsequent to May 1995 is required in accordance with CAS clause (FAR 52.230-2(a)(5)). The outstanding interest due from Unisys for May 4, 1995 through December 31, 2002 totals $12,792,372 (see Appendix 3).

The presentation shown above for the CAS 413.50(c)(12) adjustment provides for the same audit recommendation as shown in Appendix 4. The format used in Appendix 4 is the same format used in the original audit report dated April 12, 1998 and is provided for informational purposes.

## CONTRACTOR ORGANIZATION AND ACCOUNTING SYSTEM

1. Organization.

Unisys Corporation was formed in November 1986. Sales for the year ending 31 December 1995 totaled $6.2 billion. The company sold the majority of its defense business to the Loral Corporation in May of 1995. Approximately nine percent of total sales pertain to the Federal Systems Division and one third of these sales, or $190.3 million, are attributable to government flexibly priced contracts and two-thirds to commercial and firm fixed-price contracts. The majority of the contractor's 1995 sales related to the production of electronic devices..

During November of 1999, Unisys announced a "go to market" policy with a "networked organization" structure. This structure established five Core Competencies – Global Outsourcing, Global Network Services, Systems & Technologies, e-Business, and Worldwide Sales & Service – that all horizontally report under Global Industries. The U. S. Federal Government Group (formerly the Federal Systems Division) is a vertical line of business directly under Global Industries.

Calendar year 2001 sales totaled $6,018 million. The contractor's government work accounted for approximately $600 million or 10% of total sales. Approximately 25% of the government sales were related to flexibly priced contracts. Unisys employed approximately 38,870 people (including the corporate staff) at the end of 2001 with approximately 3,000 working in the U. S. Federal Government Group.

2. Accounting System.

The contractor's accounting system is acceptable for the accumulation of executive home office management expenses for Government cost reimbursable type contracts.

## DCAA PERSONNEL AND REPORT AUTHORIZATION

| | Telephone No. |
|---|---|
| Primary contacts regarding this audit: | |
| Paul Thomas Martin, Technical Specialist | (215) 597-7456 |
| Cynthia A. DiGiacobbe, Senior Auditor | (215) 986-5668 |
| Michael C. Bono, Supervisory Auditor | (610) 878-2866 |
| Other contact regarding this audit report: | |
| Thomas A. O'Donnell, Chief Technical Programs | (215) 597-5418 |
| Edmond E. Slattery, Jr., Branch Manager | (610) 878-2860 |

FAX Number
(610) 878-2870

E-mail Address
dcaa-fao6701@dcaa.mil

**AUDIT REPORT AUTHORIZED BY:**

/Signed/
EDMOND E. SLATTERY, JR.
Branch Manager
DCAA Pennsylvania Branch Office



**FOR OFFICIAL USE ONLY**

## AUDIT REPORT DISTRIBUTION

Commander
Defense Contract Management Agency
DCMAE-GND ATTN: Ms. Denise Chezek
Corporate Administrative Contracting Officer
c/o L3 Corporation
600 3rd Avenue 15th Floor
New York, NY 10016
E-mail Address: dchezek@dcmde.dcma.mil

Divisional Administrative Contracting Officer
Defense Logistics Agency
Defense Contract Management Command – Baltimore
ATTN: DCMAE-GTOG (Mr. A. Fredericks)
200 Towsontown Boulevard West
Townson, MD 21204-5299
E-mail Address: afredericks@dcmde.dcma.mil

Branch Manager
Defense Contract Audit Agency
ATTN: Mr. Jack Bell
L-3 Communications Suboffice
600 3rd Avenue 15th Floor
New York, NY 10016-2065
E-mail Address: dcaa-fao2211@dcaa.mil

Regional Audit Manager C (RAMC-6)
Defense Contract Audit Agency
Mid-Atlantic Region
E-mail Address: DCAA-RAMC-6@dcaa.mil

Chief, Technical Programs Division (RST-6)
Defense Contract Audit Agency
Mid-Atlantic Region
E-mail Address: todonnell@dcaa.mil

Unisys Corporation (through the ACO)
ATTN: Ms. Donna Q. Obrecht, Manager,
Corporate Government Accounting
Township Line and Union Meeting Roads
Post Office Box 500
Blue Bell, PA 19424-0001

## AUDIT REPORT RESTRICTIONS

1. Information contained in this audit report may be proprietary. It is not practical to identify during the conduct of the audit those elements of the data which are proprietary. Proprietary determinations should be made in the event of an external request for access. The restrictions of 18 U.S.C. 1905 should be considered before this information is released to the public.

2. Under the provisions of Title 32, Code of Federal Regulations, Part 290.26(b)(2), any Freedom of Information Act requests for audit reports received by DCAA will be referred to the cognizant contracting agency for determination as to releasability and a direct response to the requester.

3. The information contained in this audit report should not be used for purposes other than action on the subject of this audit without first discussing its applicability with the auditor.

UNISYS

Mr. Thomas Martin
Technical Specialist
Defense Contract Audit Agency
615 Chestnut Street, Suite 1000
Philadelphia. PA. 19106-4498

July 19,2001

Dear Mr. Martin,

You will find enclosed three pieces of information:

First, our actuary, Mercer, has calculated the pension funding information that you requested for individual segments of Unisys. That information is included in Enclosure 1. The funding information has been calculated on a "going concern" basis, as the government argues it should be. In our view, because the segments at issue have closed and are no longer going concerns, it would be more appropriate to calculate a segment-closing adjustment using assumptions determined on a "shutdown" basis. Shutdown assumptions would be appropriate for two reasons. First, shutdown assumptions recognize the risk transfer that occurs when a segment is closed and the risks and rewards associated with future differences between assumptions and experience will no longer be shared between the two parties. Second, the "mark to market" concept that applies in a segment closing affects the entire calculation and, as such, must be applied to liabilities as well as assets (note that CAS 413 explicitly requires that the actuarial value of assets be adjusted to market value). Specifically, this means that segment closing liabilities must be set equal to a market-based value that would apply in an arms-length transaction. Shutdown assumptions can be approximated in several ways, including annuity rate data, "settlement rates" under GAAP accounting and the rates published by the Pension Benefit Guaranty Corporation for plan terminations. Shutdown assumptions would produce a much lower surplus and might eliminate it completely.

Second, I have calculated the percentage of flexibly-priced business at each location for 1991-94. That information is in Enclosure 2. I chose those years primarily because they are the years for which I have readily available data. A period that included years prior to 1991 would probably be more representative and we believe that it would produce a lower percentage of flexibly-priced business, but I do not presently have access to the information I would need for the same calculation in those years. We hope that we will be able to settle this matter using the 1991-94 averages, but if we are unable to settle this issue, we reserve our right to identify a more representative period.

Page 2

Third, John McQuade and I have applied the percentages in Enclosure 2 to the segment data provided by Mercer in Enclosure 1 in order to calculate the estimated "adjustment of previously-determined pension costs" required by CAS 413 for closed segments. The details of that calculation are in Enclosure 3. As you can see, our calculation indicates that the gross adjustment due on such contracts is about $291,000.

The gross adjustment of $291,000 is not the amount that would actually be due to the government. As we have explained in prior correspondence and presentations, Unisys' "previously-determined pension costs" were included in the appropriate indirect cost rates. "Adjustment" of those previously-determined costs must be accomplished by crediting the same indirect cost rates to which the pension costs were originally charged. Our calculation of a gross adjustment of $291,000 assumes that all the rates for all the units in 1991-94 are open and that adjustments would be due only for 1991-94. For years in which the rates are closed or to which CAS 413 did not apply, no adjustment will be due. There has been some confusion in the past about whether all the rates at issue are closed – we do not have ready access to that information, as you know. It is clear, however, that most of the indirect cost rates for the relevant business units have been finally closed. When we have determined precisely which rates, if any, are still open, we can determine precisely what adjustment, if any, is due the government.

Please let us know if you have any additional questions.

Sincerely,

Donna Q. Obrecht
Manager, Corporate Government Accounting

Enclosures

Cc: T. Albertson, D. Chezek, J. McQuade, E. Slattery, A. Warner, Crowell & Moring LLP, DCMC - DCE, Fidelity Investments, DCAA, Philadelphia Branch Office, Unisys

Appendix 1
Page 2 of 11

WILLIAM M. MERCER

July 12, 2001

Ms. Donna Q. Obrecht
Manager, Corporate Government Accounting
Unisys Corporation
Unisys Way
Blue Bell, PA 19424

**Subject: DCAA - Segment Allocation**

Dear Donna:

As requested, we have identified the following information for each CAS segment that was divested on May 4, 1995:

- The actuarial liability for the transferred employees
- The actuarial liability for retained employees
- The allocation of the related market value of assets
- The number of retirees retained and the average age of these retirees (including terminated vested participants)
- The number of retirees transferred and the average age of these retirees
- The number of active employees retained and the average age of these employees
- The number of active employees transferred and the average age of these employees

The allocation of liabilities and employees is based on the accounting location codes provided by Unisys. Exhibit I summarizes the accounting location codes and the corresponding segment.

Liabilities for employees in GSG headquarters (01010100), former SDC retirees pre-4/1/88 (01888888) and former Burroughs retirees pre-4/1/88 (01999999) were allocated to various segments based on percentages provided by Unisys. These percentages are shown on Exhibit I.

Liabilities and employee statistics were accumulated by segment and plan. Plan assets for the defense group were allocated to each segment in proportion to the total liability for the segment to the total liability attributable to the defense group for each plan. The results are presented in Exhibit II.

William M. Mercer, Incorporated
1717 Arch Street, 27th Floor
Philadelphia, PA 19103

Office 800 8 MERCER
Fax 215 982 4601

WILLIAM M.
MERCER

Ms. Donna Q. Obrecht
July 12, 2001
Page 2

With regard to the $253,126,653 asset transfer, page 2 of Exhibit II identifies the amount of assets transferred from each of the Unisys pension plans.

All the total amounts by plan are consistent with the total amounts previously reported to the government and are based on "ongoing actuarial assumptions". The participant data, actuarial assumptions and methods are consistent with those used in the January 1, 1995 actuarial valuation report for each of the pension plans.

If you have any questions regarding the enclosed exhibits, please do not hesitate to give me a call.

Sincerely,

Glenn F. Fink

Glenn F. Fink, FSA

Copy: John McQuade (Fidelity Investments)
Bob Moreen
Rick Stein

\\phlnvfs03\data\fs01vol1\docs\unisys\2001\dcaa2.doc

Appendix 1
Page 4 of 11

**January 1, 1995 Accounting Location Codes** **Exhibit I**

| | Accounting Location Code | Description | % | Segment | Pension Plan |
|---|---|---|---|---|---|
| * | 01010100 | GSG Headquarters | 25.00% | Electronic Systems | Unisys Pension Plan |
| * | " | " " | 25.00% | Great Neck | Unisys Pension Plan |
| * | " | " " | 10.00% | Communication Systems | Unisys Pension Plan |
| * | " | " " | 25.00% | Federal Systems | Unisys Pension Plan |
| * | " | " " | 15.00% | Software & Technology | Unisys Pension Plan |
| | 01020100 | Huntsville | | Huntsville | Unisys Pension Plan |
| | 01020200 | Reston | | Great Neck | Unisys Pension Plan |
| | 01020300 | Great Neck Non-Bargaining | | Great Neck | Unisys Pension Plan |
| | 01020301 | Great Neck IUE 445 | | Great Neck | Great Neck Bargaining |
| | 01020302 | Great Neck IUE 450 | | Great Neck | Great Neck Bargaining |
| | 01020303 | Great Neck IUE 470 | | Great Neck | Great Neck Bargaining |
| | 01020304 | Great Neck IUE 444 | | Great Neck | Great Neck Bargaining |
| | 01020311 | Gr. Neck Pre-91 Contract - Conf Bd. EE | | Great Neck | Great Neck Bargaining |
| | 01020312 | Gr. Neck '91 Contract - Conf Bd. EE | | Great Neck | Great Neck Bargaining |
| | 01020313 | Gr. Neck '79 Conf Bd. EE | | Great Neck | Great Neck Bargaining |
| | 01020400 | Former Great Neck- DPG (Non-Barg) | | Great Neck | Unisys Pension Plan |
| | 01020401 | Former Great Neck- DPG IUE 444 | | Great Neck | Great Neck Bargaining |
| | 01020404 | Former Great Neck- DPG IUE 450 | | Great Neck | Great Neck Bargaining |
| | 01020500 | Former Great Neck- DPG IUE 445 | | Great Neck | Great Neck Bargaining |
| | 01020501 | Former Great Neck- DPG IUE 470 | | Great Neck | Great Neck Bargaining |
| | 01020600 | Former Sisco | | Great Neck | Unisys Pension Plan |
| | 01030100 | Communication Systems | | Communication Systems | Unisys Pension Plan |
| | 01040100 | Electronic Systems Division | | Electronic Systems | Unisys Pension Plan |
| | 01040200 | Electronic Systems Division | | Electronic Systems | Unisys Pension Plan |
| | 01040300 | Electronic Systems Division | | Electronic Systems | Unisys Pension Plan |
| | 01040301 | Electronic Systems Division - IBEW 2047 | | Electronic Systems | Non-Contributory Bargaining |
| | 01040304 | Electronic Systems Division - IBT 970 | | Electronic Systems | Non-Contributory Bargaining |
| | 01050100 | SDG - Valley Forge Ops | | Electronic Systems | Unisys Pension Plan |
| | 01050300 | Former SDG - Air Traffic Control | | Electronic Systems | Unisys Pension Plan |
| | 01050400 | Former SDG - SDG Headquarters | | Electronic Systems | Unisys Pension Plan |
| | 01060200 | Former SSG - Integrated Systems Div | | Federal Systems | Unisys Pension Plan |
| | 01060400 | Federal Systems - Services | | Software & Technology | Unisys Pension Plan |
| | 01060500 | Former SSG Tech Services | | Software & Technology | Unisys Pension Plan |
| | 01060800 | Systems Support Grp - Goddard Ops | | Federal Systems | Unisys Pension Plan |
| | 01888888 | Former SDC retirees Pre-4/1/88 | 75.00% | Electronic Systems | Unisys Pension Plan |
| | " | " " | 25.00% | Federal Systems | Unisys Pension Plan |
| | 01999999 | Former Burroughs retirees Pre-4/1/88 | 50.00% | Electronic Systems | Unisys Pension Plan |
| | " | " " | 50.00% | Federal Systems | Unisys Pension Plan |
| | 02010100 | | | Federal Systems | Unisys Pension Plan |
| | 02030100 | Federal Systems Headquarters | | Federal Systems | Unisys Pension Plan |
| | 03010100 | Commercial - General | | Federal Systems | Unisys Pension Plan |
| | 03020100 | St. Paul Non-Barg | | Electronic Systems | Unisys Pension Plan |
| | 03020103 | St. Paul IGUA 22 | | Electronic Systems | Non-Contributory Bargaining |
| | 03040100 | Former Salt Lake City | | Communication Systems | Unisys Pension Plan |

* - Allocation percentages based upon 1994 Domestic Headcount

G:\UNISYS\UNS5\VAL95\[accounting location codes.xls]Acctg Loc Codes

Appendix 1
Page 5 of 11

Audit Report No. 6181-97D19200123 S1

PTM File: Unisys41350C12(GM).xls 07/12/01 Exhibit II
Sheet: 13Jan1999DataBySegment

| Row | Description | Great Neck/Reston - Business Unit Unisys (1) | Great Neck (2) | NonContributory (3) | (Section I) Total (4) | Huntsville - Business Unit Unisys (5) | Great Neck (6) | NonContributory (7) | (Section II) Total (8) | RAMAC - Business Unit Unisys (9) | Great Neck (10) | NonContributory (11) | (Section III) Total (12) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | (A) Liability for Transferred Employees | 44,220,075 | 38,658,904 | - | 82,878,979 | 2,610,079 | - | - | 2,610,079 | - | - | - | - |
| 2 | (B) Liability for Retained Employees | 145,804,945 | 222,708,822 | - | 368,513,767 | 5,484,136 | - | - | 5,484,136 | - | - | - | - |
| 3 | Subtotal | 190,025,020 | 261,367,726 | - | 451,392,746 | 8,094,215 | - | - | 8,094,215 | - | - | - | - |
| 4 | (C) Allocation of Related Market Value of Assets | 196,549,854 | 304,621,634 | - | 503,171,488 | 8,457,335 | - | - | 8,457,335 | - | - | - | - |
| 5 | (D) Surplus (Deficit) | 8,524,834 | 43,253,908 | - | 51,778,742 | 363,120 | - | - | 363,120 | - | - | - | - |
| | **Number and Identification of Plan Participants:** | | | | Ave Age | | | | Ave Age | | | | Ave Age |
| 6 | Retirees - Retained * | 2,490 | 4,340 | | 59 | 305 | | | 48 | | | | |
| 7 | Active Employees - Retained | N/A | N/A | | N/A | N/A | | | N/A | | | | |
| 8 | Retirees - Transferred | N/A | N/A | | N/A | N/A | | | N/A | | | | |
| 9 | Active Employees - Transferred | 1,347 | 1,004 | | 45 | 170 | | | 43 | | | | |
| 10 | Total Participants | 3,843 | 5,344 | - | | 475 | - | - | | - | - | - | |
| | **Identification of Source of Allocated Assets:** | Source of Assets (Check One) | | | | Source of Assets (Check One) | | | | Source of Assets (Check One) | | | |
| 11 | Government | X | X | | | X | | | | | | | |
| 12 | Commercial | | | | | | | | | | | | |
| 13 | Both (Provide Supporting Computations) | | | | | | | | | | | | |
| 14 | Other (Describe) | | | | | | | | | | | | |

| Row | Description | Canada Operations - Segment Unisys | Great Neck | NonContributory | (Section IV) Total | Software & Technical Services - Sold Portion Unisys | Great Neck | NonContributory | (Section V) Total | Federal Systems Division - Sold Portion Unisys | Great Neck | NonContributory | (Section VI) Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 16 | (A) Liability for Transferred Employees | - | - | - | - | 17,281,151 | - | - | 17,281,151 | 2,693,060 | - | - | 2,693,060 |
| 17 | (B) Liability for Retained Employees | - | - | - | - | 15,369,911 | - | - | 15,369,911 | 22,821,121 | | | 22,821,121 |
| 18 | Subtotal | - | - | - | - | 32,651,062 | - | - | 32,651,062 | 25,514,181 | - | - | 25,514,181 |
| 19 | (C) Allocation of Related Market Value of Assets | - | - | - | - | 34,115,843 | - | - | 34,115,843 | 28,658,789 | | | 28,658,789 |
| 20 | (D) Surplus (Deficit) | - | - | - | - | 1,464,781 | - | - | 1,464,781 | 1,144,608 | - | - | 1,144,608 |
| | **Number and Identification of Plan Participants:** | | | | Ave Age | | | | Ave Age | | | | Ave Age |
| 21 | Retirees - Retained* | | | | | 734 | | | 49 | 1,124 | | | 56 |
| 22 | Active Employees - Retained | | | | | N/A | | | N/A | N/A | | | N/A |
| 23 | Retirees - Transferred | | | | | N/A | | | N/A | N/A | | | N/A |
| 24 | Active Employees - Transferred | | | | | 808 | | | 44 | 136 | | | 45 |
| 25 | Total Participants | - | - | - | | 1,542 | - | - | | 1,282 | - | - | |
| | **Identification of Source of Allocated Assets:** | Source of Assets (Check One) | | | | Source of Assets (Check One) | | | | Source of Assets (Check One) | | | |
| 26 | Government | | | | | X | | | | X | | | |
| 27 | Commercial | | | | | | | | | | | | |
| 28 | Both (Provide Supporting Computations) | | | | | | | | | | | | |
| 29 | Other (Describe) | | | | | | | | | | | | |

* Includes terminated vested participants.

Appendix 1
Page 6 of 11

| Row | Description | Electronic Systems - Business Unit Unisys (1) | Great Neck (2) | NonContributory (3) | (Section VII) Total (4) | GS Systems - Business Unit Unisys (5) | Great Neck (6) | NonContributory (7) | (Section VIII) Total (8) | Communication Systems - Business Unit Unisys (9) | Great Neck (10) | NonContributory (11) | (Section IX) Total (12) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 31 | (A) Liability for Transferred Employees | 80,492,318 | - | 4,682,279 | 85,174,597 | - | - | - | - | 35,111,732 | - | - | 35,111,732 |
| 32 | (B) Liability for Retained Employees | 182,062,611 | - | 23,385,336 | 205,447,947 | - | - | - | - | 39,949,500 | - | - | 39,949,500 |
| 33 | Subtotal | 262,554,929 | - | 28,067,615 | 290,622,544 | - | - | - | - | 75,061,232 | - | - | 75,061,232 |
| 34 | (C) Allocation of Related Market Value of Assets | 274,333,576 | - | 37,032,974 | 311,366,550 | - | - | - | - | 78,428,602 | - | - | 78,428,602 |
| 35 | (D) Surplus (Deficit) | 11,778,647 | - | 8,965,359 | 20,744,006 | - | - | - | - | 3,367,370 | - | - | 3,367,370 |
| | **Number and Identification of Plan Participants:** | | | | Ave Age | | | | Ave Age | | | | Ave Age |
| 36 | Retirees - Retained* | 5,587 | | 1,317 | 52 | | | | | 769 | | | 54 |
| 37 | Active Employees - Retained | N/A | | N/A | N/A | | | | | N/A | | | N/A |
| 38 | Retirees - Transferred | N/A | | N/A | N/A | | | | | N/A | | | N/A |
| 39 | Active Employees - Transferred | 2,598 | | 206 | 46 | | | | | 1,194 | | | 46 |
| 40 | Total Participants | 8,185 | - | 1,523 | | - | - | - | | 1,963 | - | - | |
| | **Identification of Source of Allocated Assets:** | Source of Assets (Check One) | | | | Source of Assets (Check One) | | | | Source of Assets (Check One) | | | |
| 41 | Government | X | | X | | | | | | X | | | |
| 42 | Commercial | | | | | | | | | | | | |
| 43 | Both (Provide Supporting Computations) | | | | | | | | | | | | |
| 44 | Other (Describe) | | | | | | | | | | | | |

| Row | Description | Total (Computed) Unisys | Great Neck | NonContributory | (Section X) Total | Previously Reported (1/13/99) Unisys | Great Neck | NonContributory | (Section XI) Total |
|---|---|---|---|---|---|---|---|---|---|
| 46 | (A) Liability for Transferred Employees | 182,408,415 | 38,658,904 | 4,682,279 | 225,749,598 | 182,408,415 | 38,658,904 | 4,682,279 | 225,749,598 |
| 47 | (B) Liability for Retained Employees | 411,492,224 | 222,708,822 | 23,385,336 | 657,586,382 | 411,492,224 | 222,708,822 | 23,385,336 | 657,586,382 |
| 48 | Subtotal | 593,900,639 | 261,367,728 | 28,067,615 | 883,335,980 | 593,900,639 | 261,367,728 | 28,067,615 | 883,335,980 |
| 49 | (C) Allocation of Related Market Value of Assets | 620,543,999 | 304,621,634 | 37,032,974 | 962,198,607 | 620,543,999 | 304,621,634 | 37,032,974 | 962,198,607 |
| 50 | (D) Surplus (Deficit) | 26,643,360 | 43,253,906 | 8,965,359 | 78,862,627 | 26,643,360 | 43,253,906 | 8,965,359 | 78,862,627 |
| | **Identification of Plan Participants:** | | | | | | | | |
| 51 | Retirees - Retained* | 11,015 | 4,340 | 1,317 | 16,672 | | | | |
| 52 | Active Employees - Retained | N/A | N/A | N/A | N/A | | | | |
| 53 | Retirees - Transferred | N/A | N/A | N/A | N/A | | | | |
| 54 | Active Employees - Transferred | 6,255 | 1,004 | 206 | 7,465 | | | | |
| 55 | Total Participants | 17,270 | 5,344 | 1,523 | 24,137 | - | - | - | - |

G:\UNS5\Val85\[Grounder02.xls]13Jan1999DataBySegment

| **Identification of Transferred Assets:** | Unisys | Great Neck | NonContributory | Total |
|---|---|---|---|---|
| Government | 193,045,515 | 53,931,965 | 6,149,173 | 253,126,653 |
| Commercial | 0 | 0 | 0 | 0 |
| Total | 193,045,515 | 53,931,965 | 6,149,173 | 253,126,653 |

* Includes terminated vested participants.

Appendix 1
Page 7 of 11

**Contract Mix - Flexibly Priced Revenue**
**By Segment**

| | Great Neck | Huntsville | Electronic Systems | Communication Systems | RAMAC |
|---|---|---|---|---|---|
| 1991 | 284,575 | 5,475 | 76,052 | 42,713 | 300 |
| 1992 | 348,204 | 18,683 | 63,081 | 72,715 | 816 |
| 1993 | 372,194 | 6,681 | 69,570 | 122,861 | 653 |
| 1994 | 288,195 | 4,396 | 99,995 | 128,780 | 1,472 |
| Total Flexibly Priced Revenue | 1,293,168 | 35,235 | 308,698 | 367,069 | 3,241 |
| Total Revenue (1991 - 1994) | 2,930,863 | 118,813 | 2,359,909 | 617,312 | 5,850 |
| % Flexibly Priced | 44.12% | 29.66% | 13.08% | 59.46% | 55.40% |

Appendix 1
Page 8 of 11

## Unisys Corporation
Segment Closing Analysis

| | Unisys Pension Plan | Great Neck Bargaining Plan | Non-Contrib Bargaining Plan | Total |
|---|---|---|---|---|
| **Total Assets from Enclosure 1** | 620.543,999 | 304.621.634 | 37,032.974 | 962,198,607 |
| **Liability for Transferred Employees from Enclosure 1** | | | | |
| Huntsville | 2,610.079 | 0 | 0 | 2,610,079 |
| RAMAC | 0 | 0 | 0 | 0 |
| Great Neck/Reston | 44.220,075 | 38.658.904 | 0 | 82.878,979 |
| Communication Systems | 35,111.732 | 0 | 0 | 35.111,732 |
| Electronic Systems | 80,492,318 | 0 | 4,682.279 | 85.174,597 |
| S&T Services (not closed) | 17,281,151 | 0 | 0 | 17,281,151 |
| Federal Systems (not closed) | 2.693.060 | 0 | 0 | 2.693.060 |
| Total Liability | 182.408.415 | 38.658,904 | 4.682.279 | 225.749.598 |
| Subtotal for closed segments only | 162.434.204 | 38.658.904 | 4.682.279 | 205,775,387 |
| **Liability for Retained Employees from Enclosure 1** | | | | |
| Huntsville | 5.484.136 | 0 | 0 | 5,484.136 |
| RAMAC | 0 | 0 | 0 | 0 |
| Great Neck/Reston | 145.804,945 | 222.708.822 | 0 | 368,513,767 |
| Communication Systems | 39.949,500 | 0 | 0 | 39,949.500 |
| Electronic Systems | 182,062,611 | 0 | 23.385.336 | 205.447.947 |
| S&T Services | 15.369.911 | 0 | 0 | 15,369.911 |
| Federal Systems | 22.821.121 | 0 | 0 | 22.821.121 |
| Total Liability | 411.492.224 | 222,708.822 | 23,385.336 | 657,586,382 |
| **Total Liability** | | | | |
| Huntsville | 8.094.215 | 0 | 0 | 8,094,215 |
| RAMAC | 0 | 0 | 0 | 0 |
| Great Neck/Reston | 190.025.020 | 261.367.726 | 0 | 451.392,746 |
| Communication Systems | 75.061:232 | 0 | 0 | 75,061,232 |
| Electronic Systems | 262.554.929 | 0 | 28,067,615 | 290.622,544 |
| S&T Services | 32.651.062 | 0 | 0 | 32.651.062 |
| Federal Systems | 25.514.181 | 0 | 0 | 25.514.181 |
| Total Liability | 593.900.639 | 261.367.726 | 28.067,615 | 883.335,980 |
| **Asset Allocation pre Asset Transfer per CAS 413.50(c)(5)(ii) from Enclosure 1** | | | | |
| Huntsville | 8.457,335 | 0 | 0 | 8,457.335 |
| RAMAC | 0 | 0 | 0 | 0 |

**Unisys Corporation**
Segment Closing Analysis

| | Flex % | Unisys Pension Plan | Great Neck Bargaining Plan | Non-Contrib Bargaining Plan | Total |
|---|---|---|---|---|---|
| Great Neck/Reston | | 198,549,855 | 304,621,634 | 0 | 503,171,489 |
| Communication Systems | | 78,428,602 | 0 | 0 | 78,428,602 |
| Electronic Systems | | 274,333,575 | 0 | 37,032,974 | 311,366,549 |
| S&T Services | | 34,115,842 | 0 | 0 | 34,115,842 |
| Federal Systems | | 26,658,789 | 0 | 0 | 26,658,789 |
| Total | | 620,543,998 | 304,621,634 | 37,032,974 | 962,198,606 |
| **Surplus (Deficit) for Closed Segments from Enclosure 1** | | | | | |
| Huntsville | | 363,120 | 0 | 0 | 363,120 |
| RAMAC | | 0 | 0 | 0 | 0 |
| Great Neck/Reston | | 8,524,834 | 43,253,908 | 0 | 51,778,742 |
| Communication Systems | | 3,367,370 | 0 | 0 | 3,367,370 |
| Electronic Systems | | 11,778,647 | 0 | 8,965,359 | 20,744,006 |
| Total | | 24,033,971 | 43,253,908 | 8,965,359 | 76,253,238 |
| **Government Share of Surplus (Deficit) for Closed Segments** | | | | | |
| | Flex % (Enclosure 2) | | | | |
| Huntsville | 29.66% | 107,701 | 0 | 0 | 107,701 |
| RAMAC | 55.40% | 0 | 0 | 0 | 0 |
| Great Neck/Reston | 44.12% | 3,761,157 | 19,083,624 | 0 | 22,844,781 |
| Communication Systems | 59.46% | 2,002,238 | 0 | 0 | 2,002,238 |
| Electronic Systems | 13.08% | 1,540,647 | 0 | 1,172,669 | 2,713,316 |
| Total | | 7,411,743 | 19,083,624 | 1,172,669 | 27,668,037 |
| **Assets Allocated to Transferred Employees** | | | | | |
| Total assets transferred per Enclosure 1 | | 193,045,515 | 53,931,965 | 6,149,173 | 253,126,653 |
| *Assets transferred equal to transferred liabilities for segments that remain open* | | | | | |
| S&T Services | | 17,281,151 | 0 | 0 | 17,281,151 |
| Federal Systems | | 2,693,060 | 0 | 0 | 2,693,060 |
| Total | | 19,974,211 | 0 | 0 | 19,974,211 |
| Assets transferred for closed segments | | 173,071,304 | 53,931,965 | 6,149,173 | 233,152,442 |

*Allocation of transferred assets in proportion to transferred liabilities for closed segments*

# Unisys Corporation
## Segment Closing Analysis

| | Unisys Pension Plan | Great Neck Bargaining Plan | Non-Contrib Bargaining Plan | Total |
|---|---|---|---|---|
| Huntsville | 2,781,002 | 0 | 0 | 2,781,002 |
| RAMAC | 0 | 0 | 0 | 0 |
| Great Neck/Reston | 47,115,853 | 53,931,965 | 0 | 101,047,818 |
| Communication Systems | 37,411,045 | 0 | 0 | 37,411,045 |
| Electronic Systems | 85,763,405 | 0 | 6,149,173 | 91,912,578 |
| Subtotal for closed segments | 173,071,304 | 53,931,965 | 6,149,173 | 233,152,442 |

**Surplus (Deficit) Transferred to Loral**

| | Unisys Pension Plan | Great Neck Bargaining Plan | Non-Contrib Bargaining Plan | Total |
|---|---|---|---|---|
| Huntsville | 170,923 | 0 | 0 | 170,923 |
| RAMAC | 0 | 0 | 0 | 0 |
| Great Neck/Reston | 2,895,778 | 15,273,061 | 0 | 18,168,839 |
| Communication Systems | 2,299,312 | 0 | 0 | 2,299,312 |
| Electronic Systems | 5,271,087 | 0 | 1,466,894 | 6,737,981 |
| S&T Services | 0 | 0 | 0 | 0 |
| Federal Systems | 0 | 0 | 0 | 0 |
| Total | 10,637,100 | 15,273,061 | 1,466,894 | 27,377,055 |

**Over (Under) Transfer of Surplus to Loral vs. Government Share**

| | Unisys Pension Plan | Great Neck Bargaining Plan | Non-Contrib Bargaining Plan | Total |
|---|---|---|---|---|
| Huntsville | 63,221 | 0 | 0 | 63,221 |
| RAMAC | 0 | 0 | 0 | 0 |
| Great Neck/Reston | (865,379) | (3,810,563) | 0 | (4,675,942) |
| Communication Systems | 297,074 | 0 | 0 | 297,074 |
| Electronic Systems | 3,730,440 | 0 | 294,225 | 4,024,665 |
| S&T Services | 0 | 0 | 0 | 0 |
| Federal Systems | 0 | 0 | 0 | 0 |
| Total | 3,225,356 | (3,810,563) | 294,225 | (290,982) |

## Estimated Net Monetary Impact - Computation of a Lump Sum Dollar Impact Due to the Government Based on the Audit Recommended Pension Adjustments

### Great Neck Segment

| Ref. | Description | Govt FPI Contracts | Govt Cost Contracts | Govt CPIF Contracts | Total | Notes |
|---|---|---|---|---|---|---|
| (a) | 1995 Great Neck Contract Mix | 28.66% | 26.89% | 10.40% | 65.95% | 1 |
| (b) | 1995 Estimated Average Share Ratio | 58.00% | 100.00% | 80.00% | XXXXXX | 2 |
| (c)=(axb) | Cost Type Flow Through Percentage | 16.62% | 26.89% | 8.32% | 51.83% | |
| (d) | Recommended 1995 Pension Adjustment at Great Neck | | | | 35,041,685 | 3 |
| (e)=(cxd) | Estimate Monetary Impact of the CAS 413.50 Noncompliance | | | | $18,162,105 | |

### Huntsville Segment

| Ref. | Description | Govt FPI Contracts | Govt Cost Contracts | Govt CPIF Contracts | Total | Notes |
|---|---|---|---|---|---|---|
| (a) | 1995 Huntsville Contract Mix | 0.00% | 11.80% | 0.00% | 11.80% | 4 |
| (b) | 1995 Estimated Average Share Ratio | 70.00% | 100.00% | 80.00% | XXXXXX | |
| (c)=(axb) | Cost Type Flow Through Percentage | 0.00% | 11.80% | 0.00% | 11.80% | |
| (d) | Recommended 1995 Pension Adjustment at Huntsville | | | | 200,385 | 3 |
| (e)=(cxd) | Estimate Monetary Impact of the CAS 413.50 Noncompliance | | | | $ 23,645 | |

### Electronic Systems Segment

| Ref. | Description | Govt FPI Contracts | Govt Cost Contracts | Govt CPIF Contracts | Total | Notes |
|---|---|---|---|---|---|---|
| (a) | 1995 Electronic Systems Contract Mix | 9.69% | 13.37% | 0.00% | 23.06% | 5 |
| (b) | 1995 Estimated Average Share Ratio | 70.00% | 100.00% | 80.00% | XXXXXX | |
| (c)=(axb) | Cost Type Flow Through Percentages | 6.78% | 13.37% | 0.00% | 20.15% | |
| (d) | Recommended 1995 Pension Adjustment at Electronic Systems | | | | 14,602,682 | 3 |
| (e)=(cxd) | Estimate Monetary Impact of the CAS 413.50 Noncompliance | | | | $ 2,942,440 | |

### Communications Systems Segment

| Ref. | Description | Govt FPI Contracts | Govt Cost Contracts | Govt CPIF Contracts | Total | Notes |
|---|---|---|---|---|---|---|
| (a) | 1995 Communication Sys Contract Mix | 0.00% | 83.96% | 0.00% | 83.96% | 4 |
| (b) | 1995 Estimated Average Share Ratio | 70.00% | 100.00% | 80.00% | XXXXXX | |
| (c)=(axb) | Cost Type Flow Through Percentage | 0.00% | 83.96% | 0.00% | 83.96% | |
| (d) | Recommended 1995 Pension Adjustment at Comm Systems | | | | 1,113,556 | 3 |
| (e)=(cxd) | Estimate Monetary Impact of the CAS 413.50 Noncompliance | | | | $ 934,942 | |

Total Estimated Monetary Impact of the CAS 413.50(c)(12) Noncompliance at All Closed Segments $22,063,132 6

Estimated Net Monetary Impact Notes:

1. 1995 Contract Mix Percentages for the Great Neck Segment – The recommended 1995 contract mix percentages were based on information contained in the Lockheed Martin Tactical Systems Resident Office 1995 Incurred Cost Audit Report dated July 31, 1998. This data was recommended by the New York Branch Office on April 23, 2002.

2. Estimated Average Share Ratios – Absent the submission of a cost impact proposal by Unisys that includes contract specific data for each of the affected CAS segments, we have estimated an average cost share ratio of 70/30 for Fixed Price Incentive (FPI) contracts and 80/20 for Cost Plus Incentive Fee (CPIF) contracts. An additional adjustment to the estimated average cost share ratio was made for the Great Neck FPI contracts to reflect a potential 50/50 cost share ratio on the Nexrad contract as follows:

| Description | FPI Weighting | | Estimated Govt Cost Share Ratio | | Average Govt Cost Share Ratio |
|---|---|---|---|---|---|
| Nexrad Contract | 60% of FPI TCI | x | 50% | = | 30% |
| All Other Contracts | 40% of FPI TCI | x | 70% | = | 28% |
| Est Ave Govt Cost Share | | | | | 58% |

The FPI weighting and Nexrad cost share ratios are based on a Lockheed Martin letter dated August 22, 2002 (see Appendix 5). The audit report has been qualified for the lack of supporting contract data for these weightings and cost share ratios.

3. Audit Recommended 1995 Pension Cost Adjustments – Refer to Note 3 of Schedule B.

4. 1995 Contract Mix Percentages at Huntsville and Communication Systems – The recommended 1995 contract mix percentages were based on information collected from incurred cost reports issued by the DCAA Huntsville Branch Office and the DCAA Salt Lake City Branch Office. These amounts were comparable to the 1994 cost type contract mixes reported by Unisys of 22.7% and 80.2% for Huntsville and Communication Systems, respectively; Unisys has not provided any information pertaining to the 1995 contract mix percentages.

5. 1995 Contract Mix Percentages for the Electronic Systems Segment - The aggregate recommended 1995 flexibly priced contract mix percentage of 23.06% was based on information taken from the incurred cost report issued by the DCAA Minneapolis Branch Office. This percentage was prorated between cost type and FPI contracts using the 1994 data provided by Unisys.

6. Total Estimated Monetary Impact of the CAS 413.50(c)(12) Noncompliance – This is the sum of the estimated impact for all four segments ($18,162,105 + $23,645 + $2,942,440 + $934,942 = $22,063,132).

## Computation of the Audit Recommended Interest Under the CAS Clause [FAR 52.230-2(a)(5)]

| Qtly Period | Interest Rate Section 6621 of the 1986 IRC | | Fraction of the Year that Interest is Applicable | | Outstanding Net Monetary Impact Due from Unisys | | Interest Due to the Government |
|---|---|---|---|---|---|---|---|
| 1995B | 10.00% | x | 7/52 | x | $ - | = | $ - |
| 1995C | 9.000% | x | 13/52 | x | - | = | - |
| 1995D | 9.000% | x | 3/52 | x | - | = | - |
| 1995D (a) | 9.000% | x | 10/52 | x | 22,063,132 | = | 381,862 |
| 1996A (a) | 9.000% | x | 13/52 | x | 22,063,132 | = | 496,420 |
| 1996B | 8.000% | x | 13/52 | x | 22,063,132 | = | 441,263 |
| 1996C | 9.000% | x | 13/52 | x | 22,063,132 | = | 496,420 |
| 1996D | 9.000% | x | 13/52 | x | 22,063,132 | = | 496,420 |
| 1997A | 9.000% | x | 13/52 | x | 22,063,132 | = | 496,420 |
| 1997B | 9.000% | x | 13/52 | x | 22,063,132 | = | 496,420 |
| 1997C | 9.000% | x | 13/52 | x | 22,063,132 | = | 496,420 |
| 1997D | 9.000% | x | 13/52 | x | 22,063,132 | = | 496,420 |
| 1998A | 9.000% | x | 13/52 | x | 22,063,132 | = | 496,420 |
| 1998B | 8.000% | x | 13/52 | x | 22,063,132 | = | 441,263 |
| 1998C | 8.000% | x | 13/52 | x | 22,063,132 | = | 441,263 |
| 1998D | 8.000% | x | 13/52 | x | 22,063,132 | = | 441,263 |
| 1999A | 7.000% | x | 13/52 | x | 22,063,132 | = | 386,105 |
| 1999B | 8.000% | x | 13/52 | x | 22,063,132 | = | 441,263 |
| 1999C | 8.000% | x | 13/52 | x | 22,063,132 | = | 441,263 |
| 1999D | 8.000% | x | 13/52 | x | 22,063,132 | = | 441,263 |
| 2000A | 8.000% | x | 13/52 | x | 22,063,132 | = | 441,263 |
| 2000B | 9.000% | x | 13/52 | x | 22,063,132 | = | 496,420 |
| 2000C | 9.000% | x | 13/52 | x | 22,063,132 | = | 496,420 |
| 2000D | 9.000% | x | 13/52 | x | 22,063,132 | = | 496,420 |
| 2001A | 9.000% | x | 13/52 | x | 22,063,132 | = | 496,420 |
| 2001B | 8.000% | x | 13/52 | x | 22,063,132 | = | 441,263 |
| 2001C | 7.000% | x | 13/52 | x | 22,063,132 | = | 386,105 |
| 2001D | 7.000% | x | 13/52 | x | 22,063,132 | = | 386,105 |
| 2002A | 6.000% | x | 13/52 | x | 22,063,132 | = | 330,947 |
| 2002B | 6.000% | x | 13/52 | x | 22,063,132 | = | 330,947 |
| 2002C | 6.000% | x | 13/52 | x | 22,063,132 | = | 330,947 |
| 2002D | 6.000% | x | 13/52 | x | 22,063,132 | = | 330,947 |
| Interest 5/4/95 through 12/31/02 | | | | | | | $ 12,792,372 |

(a) Due to a long transitional cost accounting period at the successor contractor, 23 weeks would be the mid-point of May 4, 1995 and 31 March 1996. To compute interest for this long cost accounting period, interest was computed at full value for the last 23 weeks of the long cost accounting period. This will approximate the interest due during the first cost accounting period as if the recovery of the pension adjustment was affected on flexibly priced contracts through billing rates starting on May 4, 1995.

**Supplemental Computation of the Audit Recommended Segment Closing Adjustments Under the Original CAS 413.50(c)(12) and the Recommended Treatment of the Excess Pension Asset Transfer**

| Description | Great Neck | Huntsville | Electronic Systems | Comm Systems | Total for Sold Segments |
|---|---|---|---|---|---|
| 1/95 Market Value of All Assets | $503,171,488 | $8,457,335 | $311,366,550 | $78,428,602 | $901,423,975 |
| 1/95 Total Actuarial Accrued Liability | (451,392,746) | (8,094,215) | (290,622,544) | (75,061,232) | (825,170,737) |
| 1/95 Total Excess Assets | 51,778,742 | 363,120 | 20,744,006 | 3,367,370 | 76,253,238 |
| Less: 1/95 Excess Assets Transferred to Loral | (18,168,839) | (170,923) | (6,737,981) | (2,299,312) | (27,377,055) |
| 1/95 Excess Assets Retained | 33,609,903 | 192,197 | 14,006,025 | 1,068,058 | 48,876,183 |
| Investment Income for Jan 1995 to May 1995 | 1,431,782 | 8,188 | 596,657 | 45,499 | 2,082,125 |
| Required 1995 CAS 413 Cost Adjustment as of 5/95 | 35,041,685 | 200,385 | 14,602,682 | 1,113,557 | 50,958,308 |
| 1995 Govt Participation Percentage (based on 1994) | 65.95% | 11.80% | 23.06% | 83.96% | |
| Cost Adjustment Allocable to Government Flexibly Priced Contracts | $23,109,991 | $23,645 | $3,367,378 | $934,942 | $27,435,957 |

This schedule computes the audit determined May 1995 CAS 413.50(c)(12) adjustment of $50,958,308 and the related estimate of the net impact due to the government of $21,304,018 using the presentation shown in our original audit report dated April 12, 1998. These amounts agree to the audit results shown on Exhibit B of this report and are provided for informational purposes only.