**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| UNISYS CORPORATION, Plaintiff, v. THE UNITED STATES, Defendant. | ) | No. 05-281C (Judge Firestone) |

| | | |
|---|---|---|
| GENERAL ELECTRIC COMPANY, Plaintiff, v. THE UNITED STATES, Defendant. | ) | No. 99-172C (Judge Firestone) |

**DECLARATION OF**
**JOHN B. MCQUADE, F.S.A., F.C.A., M.A.A.A., E.A.**

John B. McQuade makes the following declaration under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1. My name is John B. McQuade. I am a consulting actuary with more than 30 years of actuarial experience. I provide this declaration in support of DIRECTV's *amicus curiae* brief on the surplus transfer issue.

2. On December 17, 1997, DIRECTV sold its defense business ("Defense") to Raytheon Company ("Raytheon"). At the time of the transaction, the Defense segment had assets with a market value of $5,774,655,148 and liabilities valued at $3,310,028,559; the $2,464,626,589 difference between these amounts represents surplus assets for the Defense segment determined in accordance with Cost Accounting Standard ("CAS") 413.50(c)(12). The Government's share of the $2,464,626,589 surplus, determined in accordance with the *Teledyne* decision, was calculated to be $157,970,493 (on a percentage basis, the Government's share of the surplus was 6.41%). DIRECTV transferred $5,771,415,313 of assets and all of the $3,310,028,559 liabilities of the Defense segment to Raytheon; the $2,461,386,754 difference between these amounts, which equals the amount of surplus that was transferred to Raytheon, is more than 15 times the Government's $157,970,493 share of the segment closing adjustment. These calculations are described more fully in a November 21, 2003 report titled "Defense Business Segment Closing Analysis" that was prepared by me and my colleague, James F. Buss, F.S.A., and was provided to the Government.

3. On October 6, 2000, DIRECTV sold its satellite business ("Satellite") to the Boeing Company ("Boeing"). At the time of the transaction, the Satellite segment had assets with a market value of $1,843,930,981 and liabilities valued at $1,037,344,156; the $806,586,825 difference between these amounts represents surplus assets for the Satellite segment determined in accordance with CAS 413.50(c)(12). The Government's share of the $806,586,825 surplus, determined in accordance with the

*Teledyne* decision, was calculated to be $47,513,883 (on a percentage basis, the Government's share of the surplus was 5.89%). DIRECTV transferred $1,840,854,977 of assets and all of the $1,037,344,156 liabilities of the Satellite segment to Boeing; the $803,510,821 difference between these amounts, which equals the amount of surplus that was transferred to Boeing, is more than 16 times the Government's $47,513,883 share of the segment closing adjustment. These calculations are described more fully in a March 30, 2004 report titled "Satellite Business Segment Closing Analysis" that was prepared by me and Mr. Buss, and was provided to the Government.

4. In a letter dated March 30, 2004 to Alexander Wiles, which was provided to the Government (a copy of this letter is attached), I estimated that the amount "of pension costs that have been avoided by the United States Government as a direct result of the surplus pension assets that were transferred from [DIRECTV] to Raytheon" ranged between $363 million and $589 million for the four-year period December 1997 through November 2000. I further noted that the amount of Government cost avoidance "would increase substantially" if data was made available for additional periods and that "the Government will realize additional pension cost savings on a going forward basis."

5. Although I have not estimated the amount of pension cost the Government has avoided on account of the surplus assets that DIRECTV transferred to Boeing, it is my belief that the type of cost avoidance enjoyed by the Government on account of the surplus assets transferred to Raytheon, as discussed above, would similarly benefit the Government through its contracts with Boeing.

6. My calculations were made in accordance with generally accepted actuarial principles and practices. I meet the Qualification Standards of the American Academy of Actuaries to render the actuarial opinion contained herein.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 20, 2007.

John B. McQuade, F.S.A.