**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **UNISYS CORPORATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 05-281 C** |
| | ) | **(Judge Firestone)** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**DEFENDANT'S RESPONSE TO**
**BRIEF *AMICUS CURIAE* OF THE DIRECTV GROUP, INC.**
**ON THE SURPLUS TRANSFER ISSUE**

Defendant, the United States, respectfully submits this response to the Brief *Amicus Curiae* of the DIRECTV Group, Inc. on the "Surplus Transfer Issue," ("DIRECTV Br."), dated September 21, 2007.[1]

DIRECTV's brief is not a proper *amicus* filing. It adds nothing to the analysis of any of legal issues relating to the surplus transfer issue. Instead, it repeats the same legal arguments that plaintiff General Electric Company ("GE") and plaintiff Unisys Corporation ("Unisys") have already presented to the Court, and adds only a discussion, at considerable length, of some alleged facts concerning the surplus transfers in its own case (*DIRECTV Group, Inc. v. United States*, No. 04-1414C). These facts are mere allegations, however, and have never been tested in discovery in the *DIRECTV* case.

The flaws in DIRECTV's arguments are many and fatal. We address some of them below, and have already addressed the remainder in our previous filings in this case. DIRECTV

[1] DIRECTV filed a single brief under the case captions for both this case and *General Electric Co. v. United States*, No. 99-172C. Because these cases have not been consolidated, however, we have sought leave to file separate, but substantively identical, briefs in each case.

makes a facile but misleading comparison between the amount that the Government would have recovered if DIRECTV had retained all of the closed segments' pension surplus, and the amount that the Government would allegedly recover in the future as the result of the surplus transfer. The proper focus, however, is upon the closed segment's surplus. Even if DIRECTV's calculations were correct (a matter that we dispute), the inescapable fact is that following the approach that DIRECTV urges upon the Court would allow DIRECTV to retain some of the pension surplus that the Government created by reimbursing DIRECTV for excess contributions, without DIRECTV's ever settling up by making the segment closing adjustment of previously-determined pension costs that CAS 413 requires. DIRECTV's arguments have virtually nothing to do with the adjustment of DIRECTV's previously-determined pension costs.

**1. <u>DIRECTV's Brief Is Not A Proper *Amicus* Filing</u>**

We note at the outset that DIRECTV's filing is not a proper brief as *amicus curiae*. A brief of an alleged *amicus curiae* that "essentially merely duplicates the brief of one of the parties" should not be filed, because of the burdens such a brief unnecessarily imposes upon the court and the parties. *National Organization for Women, Inc. v. Scheidler*, 223 F.3d 615, 616-17 (7th Cir. 2000).[2] The arguments by DIRECTV are essentially the same arguments already presented by GE and Unisys.

Further, it is not even clear that DIRECTV has any interest in the outcome of the surplus transfer issue because DIRECTV claims that it transferred all of the surplus attributable to the two segments in question (the Defense segment to Raytheon and the Satellite segment to

[2] Alan C. Brown, Esq., of the Enterprise Business Law Group LLC, is listed as "of counsel" for both DIRECTV and GE.

Boeing). DIRECTV Br. at 3 ("It is DIRECTV's position in this case that it did, in fact, transfer all of the surplus pertaining to the closed segments to Raytheon and Boeing."). We note that DIRECTV makes this claim but then immediately contradicts it in the Declaration of John B. McQuade. F.S.A., F.C.A., M.A.A.A., E.A., dated September 20, 2007 that it attaches in support of its *amicus* brief. This Declaration recites that, for the Defense segment, according to his calculations, the Defense segment's surplus was $2,464,626,589 and the amount transferred was $2,461,386,754, which means that DIRECTV retained over $3 million of surplus allocable to that segment ($3,239,835 to be precise). McQuade Decl. ¶ 2. But, if, contrary to Mr. McQuade's declaration, DIRECTV actually had transferred all of each segment's surplus to the segment's buyer, then it has no obligation to make a segment closing adjustment in any event. As we have made clear in our filings, CAS 413.50(c)(12) requires the contractor to make a segment closing adjustment upon whatever amount of the closed segment's pension assets and liabilities that it retains and does not transfer. If DIRECTV retained none of the closed segment's pension assets and liabilities, then it has no obligation to make a segment closing adjustment under CAS 413.50(c)(12).

**2. <u>DIRECTV's Arguments On The Merits Are Fatally Flawed</u>**

The essence of DIRECTV's argument is the repeated contention that the Government will allegedly get a larger benefit from the transferred surplus in the hands of the segment's buyers (Raytheon and Boeing) than the amount that DIRECTV would owe as a CAS 413 adjustment if it had retained all of each segment's surplus. DIRECTV Br. at 8, 11-13. Thus, according to DIRECTV's untested figures, for the Defense segment that was sold to Raytheon, the Government would allegedly have recovered approximately $157 million as a CAS

413.50(c)(12) segment closing adjustment if DIRECTV had retained all the surplus allocable to the segment, but because DIRECTV allegedly transferred some $2.4 billion of surplus to the buyer, the Government will receive far more than $157 million in benefit in future years. *Id*. Mr. McQuade estimates, in calculations contained in a letter that were never tested in discovery, that the amount of benefit from the transferred surplus that the Government allegedly received in the first four years after the segment closing was between $363 million and $589 million. McQuade Declaration ¶ 4. From this, DIRECTV concludes that it would be unfair to require it to make the required CAS 413 segment closing adjustment upon any amount of surplus that it retained.

There are numerous problems with DIRECTV's argument. First, it rests upon a flawed and misleading comparison, one that leads to a failure to account for all of the closed segment's pension surplus. It would result in DIRECTV's retaining for its own benefit and the benefit of its other customers the Government's share of the retained surplus, which the Government created by reimbursing DIRECTV for amounts of pension cost that, in hindsight, were greater than needed.

Second, the amount of alleged future benefit to the Government from the transfer of surplus to the buyer is, at best, speculative. Unless the buyer and the seller happen to use exactly the same actuarial assumptions and actuarial cost methods, the value of the transferred liabilities in the hands of the buyer will be different from the value of the same liabilities in the hands of the seller. As a result, unless there is such an identity of actuarial assumptions and actuarial cost methods, the amount of surplus that the seller transfers will necessarily be different from the amount of surplus that the buyer receives. Further, the amount of the Government's future

benefit is contingent upon the buyer's not reducing the percentage share of the segment's contract mix that is represented by Government flexibly-priced contracts until the entire benefit of the surplus has been realized. It is also contingent upon the buyer's receiving the transferred pension assets and liabilities in a stand-alone pension plan that covers only the transferred segment, and not placing the transferred assets and liabilities in a larger plan with a lower funding ratio (the ratio of the plan's assets to liabilities). There is good reason to doubt, therefore, that every time surplus is transferred the Government will receive in the future the amount of benefit that DIRECTV claims.

Third, even assuming the reliability of projections of future benefit and accepting the validity of DIRECTV's faulty comparison, that comparison shows at most that – in this particular case – upon the basis of the particular assumed facts, the Government would receive more from the transferred surplus than it would have received in a CAS 413 segment closing adjustment if DIRECTV had retained all the surplus. It does not show that this would be true in every case. Indeed, the only reason that the Government allegedly receives the greater assumed benefit in this case is because the Government's alleged share of each segment's surplus (as purportedly properly calculated under this Court's teaching in *Teledyne, Inc. v. United States*, 50 Fed. Cl. 155 (Fed. Cl. 2001)) is less than the segment's share of Government contracts at the time of segment closing. For the Defense segment, for example, DIRECTV claims that the Government's share of the segment's surplus under *Teledyne* is 6.41 percent, while the segment's alleged share of Government contracts after the segment closing is either 56.5 percent (Mr. McQuade's "Low Estimate") or 91.8 percent (his "High Estimate"), or somewhere in

between. *See* Letter dated March 30, 2004 from Mr. McQuade to Alexander F. Wiles, Esq. (attached to McQuade Decl.), page S1 of S9, lines 14 and 17.

If, however, the Government's share of the segment's surplus under *Teledyne* were *less* than the Government's share of the segment's contracts as of the segment closing, the picture would be far different. In that case, even assuming that transferred surplus in the hands of the buyer provides the same or comparable benefit to the Government as a proper CAS 413 segment closing upon the segment's surplus (an assumption that we dispute), the alleged future benefit to the Government from the transferred surplus would be less than the dollar amount of a proper CAS 413 adjustment upon the segment's surplus, regardless of how much surplus was transferred. If this were the law, the seller, by its own unilateral decision to transfer surplus to the buyer, could substantially reduce if not virtually eliminate the Government's proper recovery under CAS 413.50(c)(12). This cannot be what the CAS Board intended.

DIRECTV urges the Court to hold that – in every case – transferred surplus should be a dollar for dollar credit or offset against the segment closing adjustment that a contractor would owe upon the closed segment's pension surplus. The Court should reject DIRECTV's argument as a matter of law.

**3. The Failure To Make The Required CAS 413 Segment Closing Adjustment Upon The Retained Surplus Necessarily Increases The Government's Costs**

Finally, DIRECTV contends that because of the alleged future benefit to the Government from the transferred surplus, the Government has no right to recover because the Government did not pay any increased costs. We have dealt with this erroneous argument at length in our reply brief, and will not repeat that discussion here. We would add only the following.

DIRECTV's argument assumes that it has satisfied its obligation to make a CAS 413 segment closing adjustment by transferring the surplus, and then asserts that, because it has done so, the Government did not pay any increased costs. In fact, however, the Government has paid increased costs because DIRECTV has never made the required segment closing adjustment upon the portion of the closed segment's surplus that it retained. DIRECTV's failure to make a segment closing adjustment upon the retained surplus constituted a noncompliance with the requirements of CAS 413.50(c)(12). We have not asserted that DIRECTV violated any CAS by transferring the surplus. The alleged benefit to the Government from the surplus transfer has nothing to do with the question whether DIRECTV's CAS noncompliance (failing to make the required CAS 413 segment closing adjustment upon the surplus that DIRECTV retained) increased the costs the Government paid, and DIRECTV retained.

## CONCLUSION

For the foregoing reasons, the Court should reject the arguments advanced by DIRECTV as *amicus curiae*, and should grant defendant's cross-motion for partial summary judgment and deny plaintiff's motion for partial summary judgment on the surplus transfer issue.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ Jeanne E. Davidson by s/ Kirk Manhardt
JEANNE E. DAVIDSON
Director

OF COUNSEL:

DAVID D'ALESSANDRIS
Trial Attorney
Commercial Litigation Branch
Civil Division

STEPHEN R. DOOLEY
Senior Trial Attorney (Supervisory)
Defense Contract Management Agency
495 Summer Street
Boston, MA 02210

Dated: October 19, 2007

s/ C. Coleman Bird
by s/ David D'Alessandris

C. COLEMAN BIRD
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20005
Telephone: 202.307.0453
Facsimile: 202.514.7965
E-Mail: Coleman.Bird@usdoj.gov

Attorneys for Defendant
United States

**CERTIFICATE OF FILING**

I hereby certify that on the 19th day of October, 2007, a copy of the foregoing Defendant's Response to Brief *Amicus Curiae* of the DIRECTV Group, Inc. on the Surplus Transfer Issue was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ C. Coleman Bird
by s/ David D'Alessandris